GERALD WEATHERLY V. C. E. FULGHAM, SECRETARY OF STATE

No. A-4901. Decided October 6, 1954.
(271 S.W. 2d Series 938)

*Cofer & Cofer* and *John D. Cofer*, of Austin, for relator.

*John Ben Sheppard*, Attorney General, *Mary K. Wall*, Assistant Attorney General, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

By this original mandamus proceeding it is sought to compel the respondent, the Secretary of State, to certify the name of

relator, Weatherly, as an independent candidate for the office of District Attorney for the 79th Judicial District of Texas at the General Election to be held on November 2, 1954.

Relator filed, as required by Article 13.50, Election Code, his petition with the names of 599 signers on September 16, 1954, within thirty days following the second primary election.

The Secretary of State refused to certify the name of relator upon the written protest of the Democratic nominee for the office together with supporting affidavits. The reasons assigned are as follows:

1. 41 of the signers of this application voted in the 1954 Democratic primary election. 2. The oath required by Article 13.51, Election Code, was not administered to 22 of the signers. 3. Eight of the signers are not qualified voters as required by Article 13.50 of the Vernon's Election Code. 4. 30 of the signatures were obtained by means of fraudulent and untrue representations of the persons soliciting the signatures of the contents and nature of the application. 5. Six of the signatures are forgeries. These names having been stricken, the Secretary of State found that the number of legal signatures supporting the application was less than 500, the number required by Vernon's Texas Election Code.

It is conceded that 34 of the 41 signers voted only in the second primary and not in the July primary, wherein the Democratic candidate was nominated. On this point the statute seems to be clear, certain and unambiguous in prescribing the oath to be taken by the signers as follows:

"I know the contents of the foregoing application; I have participated in no primary election which has nominated a candidate for the office for which I (here insert the name) desire to be a candidate; * * *.[1]  Art. 13.51.

A Democratic candidate in the July primary with one opponent obtained a clear majority of all votes cast and became then and there the nominee of his party for the office of District Attorney. The second or runoff primary had no bearing or effect upon that nomination. While it goes without saying that the runoff primary part of the general primary as a whole, it is only for the purpose of filling nominations for those offices for

---

[1].—It is evident that the Legislature intended the words in parenthesis to follow the word "desire."

which a candidate was not nominated in the July primary. Regardless of any moral obligation we believe that the statute has only prohibited a citizen from signing such an application when he has voted in that primary where a nominee was named for the office involved. We do not believe that the clear wording of the statute should be extended or construed otherwise.

The language in Article 13.50, Election Code, contains the same provision in almost identical words:

"* * * that no person who has voted at a primary election shall sign an application in favor of any one for an office for which a nomination was made at such primary election."

We therefore hold that these 34 signers whose names were stricken are legally qualified to sign this application.

■ As to the 30 signatures which were stricken by the Secretary of State on the ground that they were obtained by means of fraudulent and untrue representations, we are of the opinion that the Secretary of State is not clothed with the authority to determine disputed questions of fact. His duty is set forth in Article 13.52:

"The Secretary of State shall, on receipt of the application which conforms to the above requirements, issue his instruction to the county clerks of this State, or of the district, as the case may require, directing that the name of the citizen, in whose favor the application is made, shall be printed on the official ballot in the independent column under the title of the office for which he is a candidate; provided, that the citizen, in whose favor the application is made, shall first file his written consent with the Secretary of State to become a candidate, within thirty (30) days after primary election day."

The "above requirements" are set forth in Articles 13.50 and 13.51. There must be a written application signed by 500 qualified voters who have taken the proscribed oath and who have not voted at a primary election in which a candidate was nominated for such office and the application must be filed with the Secretary of State within 30 days after the second primary.

Impliedly he is authorized to review the records, to check the signer's name against the poll tax or certificate of exemption lists and to ascertain if the signer is disqualified from having voted in the primary and other irregularities or defects that may

be shown upon the face of the petition and the records. The Secretary of State is in no position to conduct an independent factual investigation nor would time permit. He has before him, so far as the contested issues of fact in this case are concerned, only those affidavits submitted by the interested parties. In some of these affidavits it is recited by the affiant that he did not appear before a notary public and was unaware of the purpose of the petition, while other affidavits are made by persons on hearsay. If in fact signatures have been obtained by means of fraudulent representations and by forgery and by the taking of false affidavits the wrongdoers may be subjected to criminal penalties. Indeed it appears that indictments have already been returned by the grand jury against certain of the notaries public for making false certificates.

There seems to be no Texas authority bearing on this question but there are cited by relator two New York cases somewhat in point. In Re M'Grath, (1919) 189 App. Div. 140, 178 N.Y.S. 231, 234; In Re Murphy, (1919) 189 App. Div. 135, 178 N.Y.S. 231, 236. These companion cases involve the authority of the Election Commission of New York to make findings of fact as to the signers of the petitions of independent candidates. The court said:

"* * * * Therefore it is its duty to refrain from acting upon papers purporting to be certificates of nomination which do not appear on the face thereof to be executed in the form and manner required by law. In other words, it must refrain from acting upon a certificate which is invalid on its face; but the board has no judicial power to investigate or decide with respect to the validity of a certificate depending on matters dehors the record. * * *."

Respondents cite two Texas cases as authority for the proposition that the Secretary of State has the power to make findings of fact where the issues are disputed, namely, Couch v. Hill, Texas Civ. App., 10 S.W. 2d 170, 172, wr. dism., and Austin v. City of Alice, Texas Civ. App., 193 S.W. 2d 290, n.r.e. In the Couch case two rival county conventions of the Republican party known by the name of their respective chairmen, Ferguson and Watts, met separately in Hidalgo County, the Ferguson Convention, in addition to selecting delegates for the State Convention, also selected candidates for local offices. At the State Convention, the Watts delegation was seated and recognized. The Ferguson people then sought to compel the clerk to print the names of these local candidates on the ballot upon the contention that the duty

of the clerk was ministerial and that he had no alternative than to print the names on the ballot. It was held that the State Convention having denied recognition to the Ferguson delegation its decision on such a party matter was final and therefore the Ferguson Convention had no authority to propose the names of any Republican candidates. The court in disposing of the question observed:

"* * * In view of these provisions, and as a practicable matter besides, it is clear that the county clerk must not blindly publish and print on the ballot every name certified to him as a party nominee, but must proceed cautiously, satisfying himself as to the authority of the person certifying; and, when he is made aware of facts or circumstances which cast reasonable doubt upon the authority of the one certifying, or upon the regularity or legality of the nomination of the persons whose names are certified to him, it becomes his duty to ascertain the true facts before he performs the important duty prescribed for him in such cases."

While the court does say it is the duty of the clerk to ascertain the "true facts," the only fact needed to be ascertained in this case was the authority of the Ferguson Convention, and as a matter of record it appeared that this body had no standing as a Republican organization.

The latter case concerned a city election. The court held that the petitions proposing independent candidates were filed too late. Additionally the court held that a fact issue was presented that could not be determined in time for the election and was therefore moot. This fact issue was with reference to the number of signers required on the petition as the statute proscribed a certain percentage of those voting at the previous general election. Neither of these cases we thing upheld respondent in his contention.

It was further urged that the relator Weatherly having admitted that he voted in the second primary was disqualified from becoming a candidate by reason of his violation of a moral obligation under the rule announced in Westerman v. Mims, 111 Texas 29, 227 S.W. 178. In the Westerman case it was admitted that Fuller, the proposed Independent candidate, had voted in the Democratic primary at which a candidate was nominated for the office of District Judge and that the official primary ballot had printed on it the words " 'I am a Democrat and pledge myself to support the nominees of the primary.' "

It was held that Fuller was not entitled to have his name certified as an independent candidate for that office. While the obligation was held to be only moral and not legal, nevertheless the granting of such writ being discretionary and not one of right, it would be refused to those who in violation of the moral obligations were said not to come into court "with clean hands." The legislature has not seen fit to prescribe any restrictions upon one seeking to be certified as an independent candidate other than those prescribed for candidates generally.

Articles 13.50 and 13.51, Election Code, were in effect in substantially the same form when the Westerman case was decided. We are of the opinion that this doctrine should not be extended further. In the absence of any statute to the contrary we see no reason to apply stricter standard of moral ethics to the candidate than the law does to the signers of the application. They and relator took the same pledge in voting in the August primary which is "I am a Democrat and pledge myself to support the nominee of this primary." Article 13.11 Election Code.

The Secretary of State having no authority to inquire into the facts dehors the record and relator not being disqualified by reason of having voted in the second primary, it follows that relator has shown a clear legal right under the requirements of the statues to have his name certified to the respective county clerks in his district as an Independent candidate for the office of District Attorney for the 79th Judicial District.

The writ of mandamus as prayed for will accordingly issue.

Opinion delivered October 20, 1954.

ASSOCIATE JUSTICE SMITH dissenting.