JOHN B. FERRIS V. MAURICE CARLSON ET AL

No. A-6906. Decided June 18, 1958.
(314 S.W. 2d Series 577)

*Curtis E. Hill,* of Dallas, for relator John D. Ferris.

*Currie, Cohen & Freeman and Ralph W. Currie,* all of Dallas, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Relator Ferris, following an unsuccessful application for mandamus in the Court of Civil Appeals (314 S.W. 2d 295), seeks a similar writ here to compel the respondents, Dallas County Republican Party Executive Committee, its chairman and other officers, to place his name on the ballot for the forthcoming primary as a candidate for the Republican nomination for judge of the 101st District Court of Dallas County.

The relator's corresponding application to the committee, admittedly filed in due time and due form, with payment of $100.00 by way of filing fee or assessment, has been refused by formal resolution of the committee adopted on May 12, 1958— approximately a month after the date of the application and a week after the payment of the $100.00. The sole reason given in the resolution was that, by the express terms of Art. 1.05 of the Election Code, relator is not entitled to go on the ballot without being legally qualified to hold the office sought by him; and that relator is not so qualified, since he has not "been a practicing lawyer or judge of a Court in this State, or both combined, for four (4) years preceding his election", as required by Sec. 7 of Art. V of the State Constitution.

In his sworn petition for mandamus relator alleges, in addition to the undisputed facts of public record that he has been licensed to practice law in this state since 1935 and has paid the State Bar dues each year in which they were required, that he is, and was at the time of filing his said application, fully qualified for the office in question, and that, although having been in the business of a securities dealer in Dallas from 1943

until approximately the end of 1957, he, during that period, engaged also in "such law practice as came to me", and, during said period, "held myself out as a lawyer, ready, willing and able to handle any legal matter offered me for handling—. My compensation paid me for such services as I rendered was paid as broker's commissions when same was due for broker's services and as attorney's when same was due as such".

The sworn answer of the respondents alleges (and relator does not deny) numerous facts in connection with the occupation of the relator which are, generally speaking, inconsistent with his being actually engaged in the practice of law in the customary sense during well over four years preceding his application to the committee, relator's said conduct including a statement in a recent lawsuit to the effect that his business was "the investment brokerage business", although he was "Reputed to be a lawyer", statements on certain of relator's recent poll tax receipts giving his occupation as other than that of a lawyer, his failure to list or describe himself as a lawyer in the Dallas telephone book or city directory or in any publication in which lawyers customarily list themselves, and other acts and omissions strongly suggesting that, if relator practiced law to any extent, such was subordinate to his principal occupation of investment broker.

Notwithstanding the facts last mentioned, we conclude that the relator is entitled to the relief prayed for. The case is quite different from that of Purcell v. Lindsey, this volume 541, 314 S.W. 2d 283, in which there was no dispute as to the facts at any stage of the proceedings and the matter of the applicant's qualifications was purely one of constitutional costruction. It is more like Weatherly v. Fulgham, 153 Texas 481, 271 S.W. 2d 938, 939, in which we held, in connection with an application of Weatherly to the Secretary of State to go on a general election ballot as an independent candidate, that the Secretary of State was "not clothed with the authority to determine disputed questions of fact" and thus could not go into the matter of whether certain other signatures requisite for the application were in fact "obtained by means of fraudulent and untrue representations". While we recognized that the Secretary had implied authority to consider and act upon "irregularities or defects that may be shown upon the face of the petition and the records", he "is in no position to conduct an independent factual investigation nor would time permit".

We see no reason why the implied authority in that instance

should necessarily be different from the authority, which the respondents in the instant case imply from Art. 1.05, supra, for determination of the qualifications of the relator. The "records" in the instant case, upon which the committee might properly act, are those of this court itself concerning the status of the relator as an attorney, and these, of course, tend to show him to be qualified rather than disqualified. Conceivably, althouh we do not undertake to decide the point, other records mihgt properly be looked to, such as, for example, a judgment of disbarment.

■ But whether the proposed candidate, who has a law license and has paid his State Bar dues each year during the critical period and claims to be a practicing lawyer, is or is not one by reason of the amount of professional service he actually renders or the degree to which he makes known his availability for that employment alone or in relation to some other occupation he follows, is a rather complicated question and, in the present instance, one of mixed law and fact, which we think the committee has not the power to determine. A contrary rule would risk considerable confusion and hardship from unfounded attacks on a candidate's eligibility, even where made in utmost good faith.

■ Briefly stated in the answer of the respondents, but not argued in the oral or written arguments, is a contention to the effect that the $100.00 tendered by the relator was not the proper filing fee or assessment in accordance with Art. 13.15 and preceding articles of the Election Code, the reason alleged being that "The respondent committee had made a tentative suggestion that the filing fees be set at $100.00 provided the application be accompanied by a petition of two hundred (200) qualified Republican voters; that where not so accompanied the tentative filing fee was $500.00. Relator has not averred either willingness or ability to pay the filing fee *which is to be fixed* by the committee at its meeting on June 9, 1958". (Emphasis supplied.) The foregoing language of the respondents is identical with that used by them in their answer to the petition of the relator for mandamus in the Court of Civil Appeals.

As we understand the argument, it simply is that the relator has not alleged his willingness to pay the assessment to be later fixed under Art. 13.08 of the Code, his tender of $100.00 not being a sufficient indication of his willingness so to do, in view of the "tentative suggestion" that candidates filing without signatures of 200 supporting voters should tender $500.00. In no event do we know of any law permitting an assessment of

a greater or less amount depending upon whether the candidate has or has not a given number of signatures on his petition. We think the tender of $100.00 was adequate evidence of the good faith of relator in the matter of the future assessment. If the actual assessment turns out to be larger than $100.00, there will still be time to omit the relator from the ballot if he does not pay by the required time. The fact that his check was received by the committee instead of being rejected and the absence of any mention of the matter in the resolution whereby the committee thereafter refused relator a place on the ballot confirms us in this view.

Subject to the relator tendering the proper filing fee or assessment when fixed, the writ of mandamus will issue, if the respondents do not duly place the name of the relator on the ballot, as we assume they will do in the light of this opinion. By authority of Rule 515, Texas R. Civ. Proc., we will decline to entertain any motion for rehearing.

MR. JUSTICE GREENHILL not participating.

Opinion delivered June 18, 1958.