

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

October 3, 1958

Honorable Linton S. Savage
County Attorney
Nueces County
Corpus Christi, Texas

Opinion No. WW-509

Re: Authority of the County
Judge with respect to
sufficiency of applica-
tions of independent can-
didates for the office of
County Attorney.

Dear Mr. Savage:

Your request for an opinion reads as follows:

"Four applicants for the office of County At-
torney have heretofore filed with the County Judge
their four several petitions to have their names
placed upon the ballot in the general election on
November 4, 1958, under the column for 'independ-
ents'. These petitions were purportedly filed pur-
suant to the provisions of Art. 13.53, Election
Code.

"The incumbent County Attorney resigned Sep-
tember 19, 1958, and the vacancy was filled on the
same date by appointment by the Commissioners Court.

"Four applicants filed petitions to have their
names placed on the ballot as heretofore set out.
One petition was not signed by five per cent of the
entire vote cast in Nueces County at the last gen-
eral election. The other three petitions apparently
have more than five per cent of the number of votes
so cast, but in many cases names were signed by
friends, husbands or wives, rather than by the in-
dividual whose name appears on the petition. Also
in many cases the applicant notarized the signatures
of many of the signers, and notaries acknowledged
the signatures of their husband or wife, and rela-
tives.

"None of the petitions, except the one which
did not bear a sufficient number of signatures, was
accompanied by a five dollar fee pursuant to Art.
4.10 of the Election Code.

"A careful perusal of the Election Code seems to indicate that Art. 13.53 pertains to 'nominations', whereas Art. 4.10 pertains to elections. That is, Art. 13.53 pertains to the method by which a candidate might secure a nomination to appear on the general election ballot in the general election as an 'independent' candidate, a party candidate on the independent ticket. This is further borne out by the very wording of the Article itself, the last sentence of which reads: 'And provided further, in elections for a city or town office, it shall not be necessary that independent candidates be nominated, but anyone otherwise qualified may have his name printed upon the official ballot for a particular office by filing his sworn application with the Mayor at least thirty (30) days prior to the election day and by paying such filing fees as may be required by statute or by charter provision.'

"And, Art. 13.50 of the Code makes the same inference of 'independents' as a party by stating 'the name of a non-partisan or independent candidate'.

"Keeping in mind that we have a vacancy of term and not of office here, and the office of County Attorney was not subject to being filled by election, at this general election, it would seem that the proper way to fill it would be on a non-partisan basis by special election prusuant to Art. 4.10 of the Election Code, one of the requirements of which is the payment of a five dollar filing fee.

"Premises considered we request answer to the following questions: One. Can names be counted if not signed by the individual whose name appears? Two. Can the names be counted when the applicant notarizes the signatures of the signers? Three. Can the names be counted if the notary acknowledges the signatures of husband, wife or relative? Four. Can signatures obtained on a petition prior to the date of resignation of the County Attorney be counted? Five. Must the County Judge certify the applicants' names to appear on the general election ballot in the column marked independent if the five dollar fee required under Art. 4.10 of the Election Code did not accompany the petition?"

In Attorney General's Opinion WW-367 (1958), this office held that Articles 13.50-13.53, Vernon's Texas Election Code, govern the candidacy of independent candidates for an

unexpired term in the office of County Attorney, except in certain respects not here material.

Article 13.53 requires that the application on behalf of an independent candidate for a county office be signed by five per cent of the entire vote cast in the county at the last general election. The signers must be qualified voters of the county who have not voted at a primary election at which a nomination for that office was made and must take the oath required by Article 13.51. The application of a candidate for a county office is filed with the County Judge, who, upon determination that an application conforms to the statutory requirements, issues an instruction to the County Clerk to place the candidate's name on the ballot in the independent column.

The purpose of the requested opinion is for advice to the County Judge in acting on the applications. The questions will be answered from the standpoint of the authority of the County Judge to act on the applications rather than from the standpoint of their sufficiency as tested in a court. The County Judge acts in an administrative capacity only in passing on the applications. Dancy v. Hunt, 294 S.W.2d 159 (Tex. Civ. App. 1956) (concurring opinion).

Your first question is: Can names be counted if not signed by the individual whose name appears?

It is not clear from your statement of facts which of the following situations obtains in this instance: (1) the signatures were purportedly written by the persons whose names are signed and an inference that they were signed by someone else can be drawn from similarity in handwriting between these and other signatures on the application; (2) the signatures were purportedly written by the persons whose names are signed but proof that they were written by someone else depends entirely on evidence outside the application; (3) the application shows on its face that the names were signed by some other person as agent for the voter. However, we are of the opinion that the result is the same in each of these possible situations and that the County Judge has no authority to refuse to count the names.

In Weatherly v. Fulgham, 153 Tex. 481, 271 S.W.2d 938 (1954), the Supreme Court considered the authority of the Secretary of State to determine, among other things, whether signatures on the application of an independent candidate for a district office were forged and to disregard signatures which he found to be forgeries in ascertaining whether the requisite number of qualified voters had signed the application.

Honorable Linton S. Savage, page 4 (WW-509)

The Court held that the Secretary of State (whose authority with respect to applications for state and district offices is the same as that of the County Judge with respect to county offices) may make certain factual determinations from an examination of the application and the records, but that he has no authority to conduct an independent factual investigation. The ruling was in this language:

> "Impliedly he /Secretary of State7 is authorized to review the records, to check the signer's name against the poll tax or certificate of exemption lists and to ascertain if the signer is disqualified from having voted in the primary and other irregularities or defects that may be shown upon the face of the petition and the records. The Secretary of State is in no position to conduct an independent factual investigation nor would time permit. He has before him, so far as the contested issues of fact in this case are concerned, only those affidavits submitted by the interested parties. In some of these affidavits it is recited by the affiant that he did not appear before a notary public and was unaware of the purpose of the petition, while other affidavits are made by persons on hearsay. If in fact signatures have been obtained by means of fraudulent representations and by forgery and by the taking of false affidavits the wrongdoers may be subjected to criminal penalties. Indeed it appears that indictments have already been returned by the grand jury against certain of the notaries public for making false certificates."

The Court also said:

> "As to the 30 signatures which were stricken by the Secretary of State on the ground that they were obtained by means of fraudulent and untrue representations, we are of the opinion that the Secretary of State is not clothed with the authority to determine disputed questions of fact."

From this case and Ferris v. Carlson, 314 S.W.2d 577 (Tex.Sup. 1958), it appears that the records which the officer is authorized to examine are official records only.

Under the holding in the Weatherly case, we think the County Judge has no authority to eliminate names from the application on the ground that signatures purportedly signed

by the voter himself are not genuine. Also see In re Murphy, 178 N.Y.S. 236 (App.Div. 1919). This would be true whether the proof of falseness of the signature depended wholly on evidence outside the application or was partially supported by inference drawn from the application, since in the latter instance full proof of forgery would depend on extraneous evidence.

We also think that the County Judge has no authority to disregard signatures which are shown to have been signed by someone else as agent. In our opinion, the signature of a voter on the application is not required by way of providing a means of identification and authentication of the genuineness of the individual's signature, but merely by way of showing that he is supporting the candidacy of the person whose application he signs. In Attorney General's Opinion V-1513 (1954) we expressed the opinion that the purpose of requiring a minimum number of signatures is to show that there is a sufficient number of qualified voters supporting the nomination of the proposed candidate to justify granting him a place on the ballot. Even where one purpose of signatures is to provide a means of identification, as is the case, for example, on applications and affidavits for absentee ballots and on ballot stubs, someone else may sign the voter's name for him in certain instances. See Article 5.05, Subdivisions 2, 3, 4 and 6, and Article 8.15 of the Election Code. It is our opinion that a person eligible to sign the application of an independent candidate but incapable of signing his name by reason of physical disability clearly may authorize someone else to sign his name for him, with a showing on the face of the application that his name is signed for him by the other individual, provided he himself actually makes the oath required of signers. Regardless of whether a voter could authorize someone else to sign for him under other circumstances, we think that in instances where the application shows that the name was signed for the voter by someone else a prima facie presumption would obtain that the signature was made upon proper authorization of the voter whose name appears and that the oath was properly administered to the person for whom the signature was made. In such instances, the County Judge would have no authority to conduct an investigation to establish a contrary fact, under the principles of the Weatherly case.

It is not necessary to consider whether a signature, properly authorized to be made by someone else, would be invalid for lack of a showing on the application that it was in fact written by someone else, since proof that the signature was not the voter's own signature would first have to be established and, as already seen, the County Judge could

not inquire into the genuineness of the signature. The false-
ness of the signature, lack of proper authorization to someone
else to make the signature, and all other matters considered
in this opinion wherein the Weatherly holding is applicable,
would have to be established in a judicial proceeding before
the County Judge would be authorized to disregard a signature.

Your second question is: Can the names be counted
when the applicant notarizes the signatures of the signers?

It is stated in 31 Tex.Jur., Notaries, ß 3, p. 346,
that, generally speaking, one who is a party to or substantially
interested in a transaction cannot act as notary with reference
thereto. We do not think the candidate is a party to the appli-
cation in the sense there used; only the signer is the party
thereto, although the candidate must signify his written con-
sent to the candidacy. Clearly a notary could not administer
his own oath as a signer of the application, but the fact
that he was a signer would not prevent his administering the
oath to other signers.

With regard to whether interest in the subject
matter disqualifies a notary, there appears to be a distinction
between the taking of acknowledgments and depositions and the
administration of oaths. While a notary may be disqualified
from administering an oath because of his interest in or con-
nection with the subject matter in certain instances (e.g.,
an attorney in a criminal case may not take the affidavit of
his client), we are not aware of any general rule in this State
disqualifying a person from administering an oath because he
has an interest in the matter or of any specific rule dis-
qualifying a candidate from acting as a notary in administering
the oath to signers of his application. The rule is to the
contrary in some jurisdictions, but the rule in Texas seems
to be that interest does not disqualify a notary from adminis-
tering an oath, the act being ministerial in nature. This is
especially true where the form and contents of the oath are
prescribed by statute, as in this instance. See 2 Tex.Jur.,
Affidavits, ßß 9, 11; Note, 74 A.L.R. 774; Komisky v. Raymond,
51 S.W. 51 (Tex.Civ.App. 1899, error dism.); Walden v. Locke,
49 S.W.2d 832 (Tex.Civ.App. 1932, error ref.). Most of the
cases involve an oath administered by an attorney to a client,
but in some of the cases it affirmatively appears that the at-
torney's compensation was directly affected by the outcome of
the suit. Many of the cases holding that an attorney is not
disqualified to take the oath of his client, even though he
has a pecuniary interest in the matter, question the propriety
of the practice but recognize that it is not illegal.

In Morris v. Dunn, 164 S.W.2d 564 (Tex.Civ.App.
1942, error ref. w.o.m.), it was held that an absentee ballot

was not invalidated because the affidavit was taken by a notary public who was a candidate on the ballot, in the absence of a showing of undue persuasion, fraud or undue influence exercised by the candidate. The court referred to the rule stated in 31 Tex.Jur. 346 and further said that the distinction between an acknowledgment and an affidavit was not material to the question before it. The court's ruling was based on the principle that where there is no showing of fraud, a mere irregularity will not prevent the counting of votes where the will and desire of the voters can be ascertained from the ballots and where there is no law prohibiting the counting of such ballots.

We are of the opinion that a candidate is not disqualified to act as a notary in administering the oath to signers of his application because of his interest therein, and that the signatures are not invalid on this ground alone. This conclusion eliminates the necessity of considering whether the identity of names of the notary and the candidate would presumptively establish their identity in person or whether the County Judge could inquire into the identity.

A signature which is obtained by fraud or undue influence is invalid, whether the fraud or undue influence was exerted by the notary or by someone else. Nelson v. Morse, 16 A.2d 206 (N.Hamp. Sup. 1940). But in view of the fact that the officer with whom the application is filed has no authority to investigate and determine the existence of fraud or undue influence (Weatherly v. Fulgham, supra), it is our opinion that the County Judge may not inquire into the existence of these elements.

Your third question is: Can the names be counted if the notary acknowledges the signatures of husband, wife, or relative?

A notary is not disqualified from administering an oath because of his kinship to the person making the oath. 39 Am.Jur., Notary Public, 8 23; Kirkland v. Ferris, 145 Ga. 93, 88 S.E. 680 (1916). Therefore, this question is answered in the affirmative. We might add that, even if the rule were different, the County Judge would not have authority to eliminate names on this ground if establishment of kinship depended on proof outside the records he is authorized to examine. Weatherly v. Fulgham, supra.

Your fourth question is: Can signatures obtained on a petition prior to the date of resignation of the County Attorney be counted?

In view of the purpose of requiring a minimum number of signatures on an application of an independent candidate, we are of the opinion that the fact that the application was signed in anticipation of the vacancy but before it actually occurred would not be material and that the signatures may be counted. The fact that the voters signed the application before the vacancy occurred does not affect their willingness to endorse the candidacy of the person in whose behalf the application is made.

Your fifth question is: Must the County Judge certify the applicants' names to appear on the general election ballot in the column marked independent if the five dollar fee required under Art. 4.10 of the Election Code did not accompany the petition?

Article 4.10 of the Election Code prescribes a filing fee for candidates in special elections only. The statutes relating to special elections are not applicable to an election to fill a vacancy in the office of County Attorney, which is filled at the general election. Att'y Gen. Ops. 0-2965, 0-5093, 0-6300, WW-367. No fee is required of independent candidates in the general election for state, district, county and precinct offices held under Article 2.01 of the Election Code. Accordingly, failure to accompany the application with a filing fee is not a ground for refusing to certify the candidate, since no fee is required.

You stated in your opinion request that one of the applications was not signed by five per cent of the entire vote cast in the county at the last general election. You have not asked whether this application should be considered, but in order to leave no doubt on the matter we will state that the County Judge is authorized (and indeed, it is his duty) to ascertain that the application contains the requisite number of signatures, and he is not authorized to certify a candidate if the application does not contain this minimum number.

## SUMMARY

The officer with whom the application of an independent candidate is filed has no authority to investigate and determine the existence of facts which depend upon proof outside the application and official records. Therefore, the County Judge may not refuse to count signatures appearing on the application of an independent candidate for the office of County Attorney on the ground that they are not genuine or were not made upon proper authorization of the voter.

A notary public is not disqualified to administer an oath because he has an interest in the subject matter to which the oath pertains, and signatures notarized by the candidate are not invalid per se. Signatures obtained by fraud or undue influence are invalid, but the County Judge has no authority to inquire into the existence of these elements.

A notary public is not disqualified to administer oaths to persons who are related to him.

Signatures on the application of a candidate for an unexpired term are not invalid because they were obtained in anticipation of a vacancy but before the vacancy actually occurred.

No filing fee is required of independent candidates in the general election for state, district, county and precinct offices.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Mary K. Wall

Mary K. Wall
Assistant

APPROVED:
OPINION COMMITTEE

Morgan Nesbitt, Chairman

Gordon C. Cass
Marvin R. Thomas, Jr.

REVIEWED FOR THE ATTORNEY
GENERAL BY:

W.V. Geppert