

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 30, 1960

Honorable Jules Damiani, Jr.
District Attorney
Courthouse
Galveston, Texas

Opinion No. WW-908

Re: Method by which names
of candidates for the
office of Drainage
Commissioner can be
placed on the election
ballot.

Dear Mr. Damiani:

Your opinion request reads as follows:

"Galveston County has an existing drainage
district designated as Galveston County Drainage
District No. 2, which has been in existence for
a number of years. Said District has had three
commissioners serving in the capacity of Drainage
Commissioners of said district. At the last Demo-
cratic Primary Election, three incumbents and a
fourth party had their names placed on the ballot
of the Democratic Primary and were voted on at
said Primary. The fourth person seeking office
for the first time received a greater number of
votes in the Democratic Primary than one of the
three incumbents.

"There are three questions on which I would
like to have your opinion, to-wit:

"Question number one: Are candidates for
office of Drainage District Commissioner required
to run in the Democratic Primary for such office?

"Question number two: Should the Democratic
Chairman certify the three persons receiving the
highest number of votes in the Democratic Primary
to the County Clerk to have their names placed on
the ballot at the general election?

"Question number three: If, in your opinion,
a person seeking the office of Drainage Commissioner
does not run in the Democratic Primary, then what
method should a person seeking such office use to
have his name placed on the ballot at the general
election?"

Drainage districts are established and operated under the provisions of Articles 8097-8176 of the Revised Civil Statutes. The original act on which these articles are based was passed in 1907, and the substance of Article 8119 was added by an amendment in 1909. Article 8119 provides for the election of drainage commissioners in the following language:

"Art. 8119. Election of commissioners

"After a district is so established, upon the petition of a majority of the real property taxpayers of the district, praying for the election of three drainage commissioners, the Court[1] shall immediately order an election for said purpose at the earliest legal time, to be held as other elections hereunder, and shall declare the three persons receiving the highest number of votes to be elected. If the third highest vote be tied, the Court shall elect the third commissioner from those tying for the place. Such commissioners so elected, when duly qualified hereunder, shall be the legal and rightful drainage commissioners for such district within the full meaning and purpose of this law. Such commissioners shall hold office until the next regular election for State and county officers, and shall then and thereafter be elected every two years at such general election."

No other provision is made in these statutes with respect to the holding of the biennial elections or the manner in which persons may become candidates for the office of drainage commissioner.

The general election referred to in Article 8119 is the election held on the first Tuesday after the first Monday in November of each even-numbered year, as provided in Article 2.01 of the Texas Election Code. In order for a candidate's name to appear on the ballot for a regular term of office at the general election for state and county officers, he must have been nominated either as a party nominee or as a non-partisan or independent candidate in accordance with the provisions of the Election Code. Chapter 13 of the Election Code provides for the nomination of party candidates through primary elections (Arts. 13.01-13.43) and party conventions (Arts. 13.45-13.48, 13.54), and for nomination of non-partisan or

---

[1]"Court" means the commissioners court. Art. 8097, R.C.S.

independent candidates by petitions of qualified voters filed within 30 days after the second primary election day (Arts. 13.50-13.53).[2]

The basic question involved in the answer to your questions is whether the intent of the provision in Article 8119 that the drainage commissioners shall be elected "at such general election" is to make the election of drainage commissioners an integral part of the general election for state and county officers and subject to the same regulations, or whether the intent is to provide that the election is to be held on the same day and at the same polling places as the general election for state and county officers but is to be conducted as a separate election. (See Article 2774b, V.C.S., as an example of a statute providing for the latter type of election.) Our study of this question has led us to the conclusion that the Legislature intended to make the election a part of the general election for state and county officers.

In the construction of a statute which is susceptible of different meanings, regard may be had to custom and legislative policy at the time of its enactment, and also to the consequences of a particular construction. If the literal meaning of the language used would be inconsistent with the existing legislative policy, or would make administration of the statute impracticable or unsuitable to a proper accomplishment of its object, the literal import may be departed from in order to give the statute a meaning in keeping with what appears to have been the true intent of the Legislature. 39 Tex.Jur., Statutes, §§ 95, 117-119, 122. In the light of present-day legislative policy with respect to the election of conservation district officers and of certain difficulties in conducting this election as a part of the general election for state and county officers, it would not be unreasonable to conclude that the Legislature intended to make this a separate election. But the legislative policy which must be looked to is that existing at the time of enactment, and difficulties of administration alone are usually not sufficient reason to infer a legislative intent at variance with the literal meaning of the statutory language.

---

[2]Throughout Chapter 13 there are references to state, district, county and precinct offices. The districts therein referred to are congressional, legislative and judicial districts (and since the establishment of the elective State Board of Education, the districts for election of members of that Board). Various other political subdivisions of the State are known as districts, such as school districts, junior college districts, road districts, and the numerous types of conservation districts (including drainage districts), many of which have elective officers; but the term "district office" as used in the Election Code does not embrace these political subdivisions.

Drainage districts may be established without reference to the boundaries of the commissioner, justice and election precincts into which the county is divided and "may or may not include villages, towns and municipal corporations, or any portion thereof." Art. 8097, R.C.S.; Holt v. State, 176 S.W. 743 (Tex.Civ.App. 1915, error ref.). Thus, a portion of the voters of an election precinct are not eligible to vote for drainage commissioners if the boundaries of the district are not coterminous with the boundaries of one or more election precincts, and consequently the poll list kept for persons voting on state and county offices would not serve for the election of drainage commissioners. Also, in such districts the same ballot could not be used without alteration by the election officers, as persons not entitled to vote for drainage commissioners should not be furnished a ballot which would enable them to do so.[3] These difficulties are not insurmountable, but do tend to impede the orderly conduct of the election and to create a likelihood of irregularities which might invalidate it. There are also other difficulties and incongruities both in the mechanics of conducting the election and in the nomination of candidates for drainage commissioner under the procedures applicable to state and county officers. However, we are of the opinion that these difficulties standing alone are not sufficient reason for concluding that the Legislature intended a separate election.

The customary legislative practice in this State is to provide for election of officers of political subdivisions similar in nature to drainage districts through elections unrelated to nomination by political parties and the other nomination procedures for state and county officers as set out in Chapter 13 of the Election Code. So far as we have been able to find, for no other type of conservation district are the officers elected at the general election for state and county

---

[3]The 1909 act providing for election of drainage commissioners restricted voting to property taxpayers. The courts have since held that statutory provisions restricting voting at elections for officers of conservation districts to property taxpayers is unconstitutional, Snelson v. Murray, 252 S.W.2d 720 (Tex.Civ.App. 1952, error ref. n.r.e.) and cf. King v. Carlton Independent School District, 156 Tex. 365, 925 S.W.2d 408 (1956); but the unconstitutional provision can be considered in determining legislative intent. This restriction created a further reason why the same poll list and ballot form were not appropriate under the voting qualifications which the Legislature sought to impose.

officers or under the nomination procedures for that election, and the election of drainage commissioners through political party nominations is now an anomaly. However, our research has revealed that it was not so anomalous in 1909, when Article 8119 was originally enacted.

Conservation districts as separate political subdivisions originated in 1905, their creation having been first authorized by an amendment to Section 52 of Article III of the Constitution in 1904. In 1905 the Legislature enacted a statute for creation of drainage districts governed by a board of trustees to be elected biennially, the date of the biennial elections in each district being determined by the first election following creation of the district. Ch. 110, Acts 29th Leg., Reg. Sess., 1905. The same Legislature also enacted a statute for creation of irrigation districts, whose officers were to be elected on the first Tuesday in February of each even year. Ch. 122, Acts 29th Leg., Reg. Sess., 1905. In 1907, the Legislature passed a new law for creation of drainage districts, on which the present law is based, which as originally enacted provided only for appointment of drainage commissioners. See Art. 8118, R.C.S. This law was amended in 1909 to provide the alternate method of selection through elections as now provided in Article 8119. Ch. 13, Acts 31st Leg., Reg. Sess., 1909. The two types of districts created under the 1905 enactments were the only types of conservation districts having elective officers which were in existence in 1909. So it is seen that at the time Article 8119 was originally enacted the general pattern for election of conservation district officers as it exists today had not become firmly established, and in making the election a part of the general election for state and county officers the Legislature was not departing from a long-standing general policy to the contrary as would be the case today.

Contemporaneous administrative construction of a statute may be considered in attempting to arrive at its intended meaning. At the present time there is a variance in the manner of conducting the election among the several counties in which drainage districts are located, perhaps influenced in some instances by the manner in which elections for other types of conservation districts are held. We have not been able to ascertain whether there was a uniformity of construction immediately after enactment of the statute in 1909 and during the early years of its existence; but, significantly, the County Clerk's Office of Galveston County has informed us that from 1910 forward the election of drainage commissioners in that county has been held as a part of the general election and nominations have customarily been made in the Democratic primaries.

From a reading of the opinion in Cantwell v. Suttles, 196 S.W. 656 (Tex.Civ.App. 1917), the only case we have found

which might shed any light on judicial or administrative construction of the statute, it could be inferred that the election of drainage commissioners there involved had been conducted as a separate election. In that case, the drainage district included a part of election precincts Nos. 4, 5, 6 and 11 of Liberty County, but voting for drainage commissioners for the entire district was conducted only at the polling place for precinct No. 11. Since voters residing in election precincts 4, 5 and 6 were by law required to vote for state and county officers in the precinct of their residence, it could be inferred that a separate ballot had been prepared and a separate poll list kept in precinct No. 11 for the election of drainage commissioners--in other words, that it had been conducted as a separate election. We have obtained the record in Cantwell v. Suttles and have found that the election was held as a part of the general election. Although all residents of the district were required to vote for drainage commissioners in election precinct No. 11, the office was listed on the regular general election ballot which was used in precinct No. 11, and a separate poll list was not kept for the voters who voted only on this office. All the candidates for drainage commissioner were running as write-in candidates, but the office title was listed under the party columns as well as under the independent and write-in columns, and some of the voters cast their write-in votes in the party columns. The County Clerk's Office of Liberty County has informed us that for a number of years the election of drainage commissioners has been held in that county as a part of the general election and candidates customarily are nominated in the Democratic primaries, but they were unable to say how far back this practice went. In view of the evidence establishing the administrative construction placed on the statute in 1916, it may reasonably be assumed that this has always been the practice in that county. While our research has necessarily been limited, we have not uncovered any evidence of a contrary construction during the immediate years following enactment of the law in 1909.

To restate our holding, we are of the opinion that the biennial election of drainage commissioners is to be conducted as a part of the general election and that nominations for the office are to be made under the same rules as for the general election for state and county officers. We shall now turn to answering the specific questions you have asked.

Your first question is whether candidates for the office of drainage commissioner are required to run in the Democratic primary. Although candidates for state and county offices usually run as the nominee of a political party, they may also run as independent or non-partisan candidates in accordance with the method set out in Articles 13.50-13.53 of

the Election Code.  We take your question to mean whether candidates may run and be nominated in the Democratic primary; in other words, whether political parties may make nominations for this office.  This question is answered in the affirmative.  Party nominations may be made in the same manner as nominations for county and precinct offices.

In answer to your third question, we are of the opinion that persons seeking this office may also run as independent or non-partisan candidates upon compliance with the provisions of Articles 13.50-13.53 of the Election Code relating to county and precinct offices.  In our opinion, the petition must be signed by 5 per cent (or 500, whichever is the lesser number) of the qualified voters of the drainage district as determined by the number of voters residing in the district who voted at the last preceding general election.  Cf. Dancy v. Hunt, 294 S.W.2d 159 (Tex.Civ.App. 1954, error ref. n.r.e.).

Petitions of independent candidates must be filed within 30 days after the second primary election.  Art. 13.50.  Since the final filing date for the 1960 general election has already passed, we shall state for the benefit of the officers of any county wherein the county officers have been conducting the election under different filing rules, that in our opinion the County Judge may still accept applications of independent candidates for this office in the coming general election.  In Sterrett v. Hyer, Cause No. 16,058 in the Dallas Court of Civil Appeals, decided on October 5, 1956 (opinion not reported), the Court held that the statutory deadline was not controlling under the circumstances of that case.  A vacancy had occurred in the office of Judge of a County Court at Law in Dallas County on September 1, 1956.  Prior to the statutory deadline, which occurred on September 24 (30 days after the second primary held on August 25), an individual attempted to file his application to run for the unexpired term as an independent candidate, but the County Judge refused to accept the application because of a ruling by the District Attorney that the office could not be filled by the voters at the general election in 1956.  The candidate brought an action for a writ of mandamus against the County Judge to compel him to accept the application, and the district court granted the writ.  An appeal was taken to the Court of Civil Appeals, and on September 28, 1956, the Court of Civil Appeals affirmed the judgment of the trial court.  Sterrett v. Morgan, 294 S.W.2d 201. After rendition of the Court of Civil Appeals decision, the person who had been appointed to fill the vacancy also attempted to file his application as an independent candidate, but the County Judge refused to accept it because the statutory deadline had already passed.  Thereupon, the appointee brought an original mandamus action in the Court of Civil Appeals to compel

the County Judge to accept his application. In Sterrett v. Hyer, supra, the Court held that under the circumstances of the case the appointee had not had a reasonable opportunity to comply with the letter of the law in the matter of filing of his application, and that the County Judge should receive and act upon it in the same manner as if it had been filed within thirty days after the second primary.

By similar reasoning, where the prospective candidates for the office of drainage commissioner have been under the impression that they did not have to file in compliance with Articles 13.50-13.53 because of the legal interpretation which had been followed by the local officials, they should be allowed a reasonable opportunity to file their applications after the change in interpretation. We are of the opinion that the candidates should be allowed a reasonable time for the circulation of their petitions after announcement of the change in filing requirements.

In your second question you have asked whether the Democratic Chairman should certify the three persons who received the highest number of votes in the Democratic primary to the County Clerk to have their names placed on the ballot at the general election. In view of the fact that our office cannot give advice for the guidance of party officials but is limited to advising the county officers concerning their official duties, we shall answer this question from the standpoint of whether the County Clerk should place the names of these candidates on the general election ballot.

Attorney General's Opinion No. V-1529 (1952) held that the county clerk acts in a ministerial capacity in receiving certificates of nomination and in placing names of nominees on the election ballot, and where the certificate is regular on its face he does not have the duty or authority to determine questions of irregularity or illegality in the nomination which would depend upon an ascertainment and determination of extraneous facts. This holding is in accord with the general rule in other jurisdictions. See 29 C.J.S., Elections, §§ 147, 155, 156, 162.

In Weatherly v. Fulgham, 153 Tex. 481, 271 S.W.2d 938 (1954), the Supreme Court quoted with approval the following excerpt from a New York case involving the authority of the Election Commission of New York to make findings of fact as to the signers of the petitions of independent candidates:

"* * * Therefore it is its duty to refrain from acting upon papers purporting to be certificates of nomination which do not appear on the

face thereof to be executed in the form and
manner required by law. In other words, it
must refrain from acting upon a certificate
which is invalid on its face; but the board
has no judicial power to investigate or de-
cide with respect to the validity of such a
certificate depending on matters dehors the
record. * * *"

The Weatherly case held that in acting on petitions of in-
dependent candidates the Secretary of State could ascertain
irregularities and defects that may be shown upon the face
of the petition and the records, but he had no authority to
inquire into facts dehors the record. Ferris v. Carlson,
314 S.W.2d 577 (Tex.Sup. 1958), and Baker v. Porter, 333
S.W.2d 594 (Tex.Sup. 1960), announced a similar rule with
respect to the authority of a party executive committee in
acting on applications for a place on the primary ballot.
From these cases, we think the records which the County Clerk
of Galveston County could examine in this instance are the
certificate of nomination which has been filed with him and
the returns of the primary which have been filed in his of-
fice pursuant to Articles 13.23 and 13.24 of the Election Code.
We are of the opinion that the County Clerk would have no au-
thority to question the regularity of the nominations, and it
would be his duty to place the names of the nominees on the
general election ballot unless otherwise directed by judgment
or order in a judicial proceeding.

## SUMMARY

The biennial election of drainage commis-
sioners provided for in Article 8119, R.C.S.,
is a part of the general election for state and
county officers, and nominations for the office
may be made in the same manner as nominations for
county and precinct offices. Political parties
may make nominations for the office in accordance
with the requirements for nominating county and
precinct candidates. Independent candidates must
file their applications in accordance with the
provisions of Articles 13.50-13.53 relating to
county and precinct offices.

The county clerk acts in a ministerial
capacity in receiving certificates of nomina-
tion and in placing names of nominees on the
general election ballot. He does not have the
duty or authority to raise and determine ques-
tions of irregularity or illegality in the

nomination which do not appear on the face of the certificate or from an examination of official records.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Mary K. Wall
Assistant

MKW:bh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Charles Cabaniss
J. C. Davis, Jr.
Grundy Williams

REVIEWED FOR THE ATTORNEY GENERAL
BY:

Houghton Brownlee, Jr.