John Robert McCLELLAND, Relator

v.

Dudley C. SHARP et al., Respondents.

No. 160.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 26, 1968.

Gordon L. Ginn, Miller & Ginn, Houston, for relator.

William B. Cassin, Baker, Botts, Shepherd & Coates, Houston, for respondents.

PER CURIAM.

This is a petition for writ of mandamus by which the relator, John Robert McClelland, seeks an order directing the respondent, Dudley C. Sharp, Chairman of the Executive Committee of the Harris County Republican Party, and Peter O'Donnell, Chairman of the State Executive Committee of the Republican Party in Texas, to certify him as the duly nominated Republican candidate for State Representative, Legislative District No. 24, Position No. 6, in Harris County, Texas.

The uncontroverted facts show that on February 5, 1968, the relator filed with the respondent Sharp his application to be placed on the ballot as candidate for Representative Legislative District No. 24, Position No. 6, in the primary election to be held by the Republican Party in Harris County on May 4, 1968. In this application the relator recited that his residence was 2803 University Boulevard, Houston, Harris County, Texas. Such address lies within the boundaries of Legislative District No. 24. In such primary election the relator, having only one opponent, received a majority of the votes cast for the nomination in question.

Under Art. 3, Sec. 7, of the Constitution of the State of Texas, Vernon's Ann.St., no person shall be a representative unless he be a resident of the district for which he shall be chosen for the last year preceding his election. The general election at which the representatives for the State of Texas are to be elected will be held on November 5, 1968.

Further uncontroverted admitted facts show that the relator was a candidate for State Representative in the 22nd Legislative District, Position No. 7, in Harris County, Texas, in a special election held on November 11, 1967, to fill a vacancy in that office. Relator's 1967 voter registration was in Harris County Precinct No. 129, which lies within the 22nd Legislative District, not within the 24th. In the November 11, 1967 special election, relator voted in Harris County Precinct No. 129, On November 18, 1967, in December, 1967 and on January 27, 1968, relator again voted in Precinct No. 129 in a City of Houston bond election and other elections. Relator's 1968 certificate of registration originally registered him in Precinct No.

129 but was, on January 24, 1968, caused by him to be transferred to Harris County Precinct No. 87 which is within the 24th Legislative District.

These facts, which are reflected by public record, and which are based on representation by relator himself, show on their face that relator will not, on November 5, 1968, be qualified to hold the office for which he seeks to have himself certified as the Republican nominee. They show, on their face, that he has not been a resident of Legislative District No. 24 for all of the last year preceding November 5, 1968. On November 11, 1967, by maintaining his candidacy for representative from District No. 22 and by voting in that special election, the relator represented himself to be a resident of that district on that date. His conduct, which implies that representation, is a matter of public record. The same can be said of his votes in the November 18, 1967, city bond election in December, 1967, and January, 1968, and his original 1968 voter registration.

Relator in his petition for mandamus has recited a number of facts dehors the record that are calculated to refute the inevitable conclusion to be drawn from the above publicly recorded facts. He alleges that he filed his application to be placed on the ballot as a candidate in the November 11, 1967 special election on October 4, 1967, and moved his residence to District No. 24 on October 26, 1967, and that he did not withdraw his candidacy because he felt that he would have very little chance of winning. He alleges that he continued to vote in Precinct No. 129 "because this was the precinct shown on his voter registration certificate, and he did not think it was necessary to change it, since he still maintained his apartment at 2760 Marilee Lane in said precinct." He further alleges that his application for his 1968 voter registration in Precinct No. 129 was inadvertently sent in to the Harris County Assessor & Collector of Taxes by his wife.

■ Art. 1.06 of the Texas Election Code, V.A.T.S. provides that no officer authorized to issue certificates shall issue any certificate of election to any office to one who is ineligible to hold such office. It is pursuant to this statutory prohibition that the respondents have refused to certify the relator as having been elected in the May 4, 1968 primary as the Republican nominee for representative for Position No. 6, District No. 24. They have based such refusal on the conclusion that the facts above set forth as shown by public records show that if he were elected in the general election on November 5, 1968, he would be ineligible to hold the office because he would not have been a resident of District No. 24 for the full year next preceding that election. We hold that they have correctly concluded that under the circumstances which here exist, they are prohibited from certifying the election of relator.

Weatherly v. Fulgham, 153 Tex. 481, 271 S.W.2d 938, was a mandamus proceeding in the Supreme Court of Texas wherein the relator sought an order directing the Secretary of State of Texas to certify his name as an independent candidate for the office of District Attorney for the 79th Judicial District, at a general election to be held on November 2, 1954. The relator had, as required by Art. 13.50, timely filed his petition with the names of 599 signers. The statute required that the petition be signed by 500 qualified voters who had not voted at a primary election at which a candidate for the office in question had been nominated. The Democratic nominee filed a protest to putting the relator's name on the ballot, which protest was accompanied by affidavits as to the various factual basis for striking 107 of the 599 signatures attached to the petition. The Secretary of State sustained the protest and refused to certify the relator. The affidavits filed in support of the protest were to the effect that as to some of the signers, there had not been a proper administration of the required oath. Some of the signers were al-

leged not to have been qualified voters. Some of the signatures were alleged to have been obtained by fraud and some of the signatures were alleged to be forgeries.

There were also affidavits to the effect that 41 of the signers had voted in the Democratic primary election. The protest was to the effect that under the above noted requirement of Art. 13.50, those signatures, which had voted at the primary election that year, should be stricken for that reason. The record shows, however, that the Democratic nominee had been elected in the first primary and that 34 of the 41 signers in question had voted only in the second primary. The court held that the candidate was nominated in the first primary and not the second and that those 34 voting only in the second primary were legally qualified to sign the relator's petition.

As to those signers whose signatures were alleged to have been obtained by fraud and those as to whom it was alleged that the oath was not administered, the court held that there was involved a fact question which could be resolved only by an inquiry into facts *dehors the record* which the Secretary of State was not authorized to do.

We believe that there is significance in what the Supreme Court did not hold in the Weatherly case. The Court did not hold that the Secretary of State could not disregard the signatures of those shown to have voted in the first primary in which a candidate had been nominated. Rather, the Court said, as to the authority of the Secretary of State:

"Impliedly he is authorized to review the records, to check the signer's name against the poll tax or certificate of exemption lists and to ascertain if the signer is disqualified from having voted in the primary and other irregularities or defects that may be shown upon the face of the petition and the records."

In Ferris v. Carlson, 158 Tex. 546, 314 S.W.2d 577, another mandamus proceeding, the relator sought an order directing that his name be placed on the ballot as a candidate for the Republican nomination for District Judge. The respondents had refused to so place his name on the ballot. The refusal was based on their conclusion that he was not qualified to hold the office he sought because he had not been a practicing lawyer or judge for four years as required by Art. 5, Sec. 7, of the Constitution of the State of Texas. It was the contention of the respondents that, while the applicant had been a licensed attorney for more than four years, he had not been a "practicing lawyer." The Supreme Court, granting the relator's petition for mandamus, held that the question as to whether relator was a "practicing lawyer" was a complicated, mixed question of law and fact which the respondents executive committee did not have the power to determine. Here again, however, the Supreme Court did not hold that the officer whose authority it was to act should ignore matters of public record relating to the qualification or disqualification of a proposed candidate. The court said:

"The 'records' in the instant case, upon which the committee might properly act, are those of this court itself concerning the status of the relator as an attorney, and these, of course, tend to show him to be qualified rather than disqualified. Conceivably, although we do not undertake to decide the point, other records might properly be looked to, such as, for example, a judgment of disbarment."

We think it appropriate to attach significance to the "records" to which the Supreme Court refers, these being public records in each instance.

In Purcell v. Lindsey, 158 Tex. 541, 314 S.W.2d 283, the relator, in a mandamus proceeding, sought an order directing the State Democratic Executive Committee to certify his name as a candidate for the Democratic nomination for judge of the Court of Criminal Appeals. The Supreme Court held that the relator was required to be a practicing lawyer for ten years in order to be qualified for the office he sought

and that the committee's refusal to certify him because he was not licensed to practice law, according to the records of the Supreme Court, until a date less than ten years before the date in which the general election was to be held, was proper.

From these authorities it is apparent that those charged with the duty of certifying the names to appear on the ballot are not authorized to make findings as to qualifications of proposed candidates when those findings are based on controverted facts not of record. Neither is this court in an original proceeding involving the exercise of such authority entitled to make any findings of fact. Donald v. Carr, Tex.Civ.App., 407 S.W.2d 288. However, authority is implied in the language of Art. 1.06 of the Texas Election Code that some nature of determination be made as to such qualification citation. We are of the opinion that where, as here, the facts reflected by public records establish a disqualification of the proposed candidate, the respondents were neither required to ignore those facts nor permitted to go outside the record inquiring of other facts in exercising their implied authority. Particularly is this true where the public records showing the disqualification of the relator are based on his own actual or implied representations as to his residence at the time in question. While we do not attempt to distinguish between the various kinds of public records we do believe that where, as here, the public records evidencing disqualification are based on representations made and actions taken by the relator, himself, they are particularly compelling.

It is true that, as noted in Ferris v. Carlson, supra, the Courts should not adopt a rule which "would risk considerable confusion and hardship from unfounded attacks on candidates' eligibility, even when made in utmost good faith." Neither should the Courts adopt a rule which would require party officials to certify a candidate which the public records show not to be qualified for the office he seeks.

To do so would be calculated to effectively deny their party a right to have a legally qualified candidate on the ballot and to deprive the electorate of the privilege of voting for a legally qualified nominee of that party.

Petition for writ of mandamus is denied.