(No. 35511.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* LOUIS F. CAPUZI *et al.*, Appellees.

*Opinion filed December 1, 1960.*

Benjamin S. Adamowski, State's Attorney, of Chicago, (Francis X. Riley, and Edward J. Hladis, Assistant State's Attorneys, of counsel,) for appellant.

Kirkland, Ellis, Hodson, Chaffez & Masters, of Chicago, (Charles M. Rush, of counsel,) for appellees Louis F. Capuzi *et al.,* and Leslie J. Smith, of Forest Park, for appellee Elmer W. Conti.

Per Curiam: The plaintiff, the People of the State, by the State's Attorney of Cook County, filed in the superior court of Cook County a complaint seeking a declaratory

judgment that Louis F. Capuzi and 37 other defendants, all of whom were members of the General Assembly, had qualified as members while holding positions, among others, as deputy coroner of Cook County, deputy bailiff and deputy clerk of the municipal court of Chicago, and village president of the village of Elmwood Park, in violation of article III and section 3 of article IV of our constitution. Thereafter, plaintiff filed an amendment alleging that it did not attack the qualifications and the right of defendants to serve as members of either house of the General Assembly. Subsequently, plaintiff filed an amended complaint changing the original complaint to one in *quo warranto,* challenging the title of the defendants to their respective offices or positions. Defendant Elmer W. Conti, the village president, filed a separate answer and the remaining defendants a joint answer. The cause was heard upon a stipulation of evidence and exhibits, consisting of certified copies of official documents. The court entered an order holding that nine defendants (the appellees here) were lawfully exercising and legally holding their respective positions or employments under the constitution and the laws of the State, and dismissed the cause as to them. Upon plaintiff's motion, the cause was dismissed as to the remaining defendants without prejudice to plaintiff's right to reinstate the cause as to them if the judgment involving the nine defendants be reversed. The court found that there was no just reason for delaying enforcement or appeal of the judgment, pursuant to section 50(2) of the Civil Practice Act. (Ill. Rev. Stat. 1959, chap. 110, par. 50.) Plaintiff prosecutes this direct appeal, important constitutional questions being involved.

From the stipulation of facts it appears that defendant Conti was elected president of the village of Elmwood Park on May 4, 1953; that he took an oath of office and put up a bond; that he receives an annual salary as president of the village; and that he participates in the Illinois municipal

retirement fund and in the legislative retirement fund. Conti's office is established conformably to section 9—75 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1959, chap. 24, par. 9—75). Conti qualified as a member of the 71st General Assembly on January 7, 1959. During the legislative session, he takes a leave of absence from his duties as village president. During this period, he is credited in his local pension fund.

Capuzi has been deputy coroner of Cook County since July 1, 1956, pursuant to appointment by the coroner. He does not enjoy civil service status. He took an oath at the time of his appointment, and put up a bond. His duties consist of conducting independent investigations and inquests in the name of the coroner. Thereafter, he submits a report to his superiors, who review the inquest reports and check the investigative work. Capuzi takes a leave of absence when the General Assembly is in session and does not receive remuneration as a deputy coroner during that time. Other deputies perform Capuzi's duties during his absence. He does not have a definite term of office, being subject to discharge. Capuzi participates in the Cook County retirement fund and the State retirement fund. While attending the General Assembly, he is not accredited in the local pension fund. He took office in the 70th and 71st General Assemblies in January of 1957 and 1959, respectively.

Five defendants are deputy bailiffs of the municipal court of Chicago. They assumed their positions pursuant to appointment by the bailiff. They took oaths of office and put up bonds. They do not have a definite term of employment, but are subject to discharge. They are participants in both the municipal employee's and State retirement funds. During the period of attendance at sessions of the General Assembly, they receive no credit in the local municipal fund. These five defendants took office in the 70th and 71st General Assemblies in January of 1957 and 1959. All were

deputy bailiffs prior to their election in those years. Their duties are restricted to the municipal court of Chicago and its jurisdiction.

Two of the defendants are deputy clerks of the municipal court of Chicago. One of them is chief deputy clerk. His immediate superior is the clerk of the municipal court. The duties of the other consist of making out warrants, sorting files, and obtaining data for answering communications. Neither has civil service status. They took oaths of office, and put up bonds. They take a leave of absence while the General Assembly is in session from their positions as deputy clerks, and do not draw a salary for their municipal positions. Both participate in the municipal court employee's pension fund and in the legislative pension fund. While attending sessions of the General Assembly, they are not credited in the local pension fund. Neither has a fixed term, but are subject to discharge. The scope of their duties is confined to the municipal court of Chicago. They took office in January of 1957 and 1959 as members of the 70th and 71st General Assemblies.

Plaintiff contends that article III and section 3 of article IV of our constitution forbid one person from being elected and qualifying as a member of the General Assembly while he holds another office under the authority of the State, and, further, that acceptance of membership in the General Assembly constitutes a resignation from the prior office. Eight defendants maintain that their employments as deputy coroner, deputy bailiffs and deputy clerks do not violate section 3 of article IV; that their employments are not incompatible with legislative service; that there is no constitutional ban against public employment, and that their positions are not lucrative offices within the contemplation of section 3 of article IV. The ninth defendant, the village president, asserts that section 3 of article IV affords no basis for this action and gives no authority to attack the holding of the position of vil-

lage president, and that he is not barred from his position by article III of the constitution; and that there is no real incompatibility between his services as a legislator and village president, particularly where the latter has been stripped of his executive power, as here, by the provision for managerial form of government. Ill. Rev. Stat. 1959, chap. 24, pars. 20—1 *et seq.*

Article III declares that the powers of the government of this State are divided into three distinct departments, the legislative, executive and judicial; "and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

We have had frequent occasion to construe article III. In the early case of *Field* v. *People ex rel. McClernand,* 2 Scam. 79, referring to a like provision in the constitution of 1818, the court said: "This is a declaration of a fundamental principle; and, although one of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government, and those of the general and State governments, is evidenced by the Constitutions of all. In every one there is a theoretical or practical recognition of this maxim, and at the same time a blending and admixture of different powers." More recently, we have observed that the doctrine of separation of powers does not inexorably preclude one of the three departments of government from exercising powers which also may be given to another department. (*Board*

*of Education* v. *Nickell,* 410 Ill. 98.) And, in *People* v. *Reiner,* 6 Ill.2d 337, we said that the separation-of-powers provision of the constitution does not require that the legislative, executive, and judicial powers should be entirely divorced one from the other, but that the whole power of two or more of these departments shall not be lodged in the same hands. It has been held that one individual cannot hold the judicial office of police magistrate and the executive office of town clerk at the same time. *People* v. *Bott,* 261 Ill. App. 261.

Construing an identical provision of the constitution of 1848, this court observed that the separation of powers was made to prevent a sacrifice of one of two interests under the same authority, and that the entire provision "is intended is cut up the evil by the roots, without any speculation or experiment as to what might be the tendency of certain powers or places which seem, or might seem, to offer no inducement to abuse." (*Dickson* v. *People ex rel. Brown,* 17 Ill. 191, 194.) In *Saxby* v. *Sonnemann,* 318 Ill. 600, the defendant Sonneman qualified as a member of the General Assembly in January of 1919. On July 1, 1919, he was appointed a deputy Attorney General. The plaintiff alleged that he purported to exercise the powers of the office of Attorney General. Defendant did not plead that he was performing merely ministerial duties. In holding that article III specifically deprived a member of one of three coordinate departments of government from exercising any power properly belong to the other two branches, this court pointedly observed that had the defendant defended upon the ground that his duties were of only ministerial character a different result might have followed. The court said (p. 608): "It may readily be conceived that one who serves as an investigator merely, collecting facts, and who thereby prepares himself to become a witness in a lawsuit, or who engages in similar service, is not exercising powers peculiar to the department of government by which he is

employed, and is not, therefore, within the inhibition of article 3 of the constitution, though he may be a member of the different department of government. This is so because such employee exercises no powers of a department in which he works."

Article III does not apply in this case since the defendants are not exercising governmental sovereignty in the performance of their duties under their local positions and since section 3 of article IV specifically deals with the qualifications of members of the General Assembly

Section 3 of article IV relates to eligibility to membership in the General Assembly. So far as relevenat, it provides: "No judge or clerk of any court, secretary of state, attorney general, State's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state, or any foreign government, shall have a seat in the general assembly: *Provided,* that appointments in the militia, and the offices of notary public and justice or the peace, shall not be considered lucrative."

No one of the nine defendants holds the office of judge, clerk of any court, Secretary of State, Attorney General, State's Attorney, recorder, sheriff, collector of public revenue, or member of either house of congress. No one of them is charged with holding any lucrative office under the United States or any foreign government. The precise question is whether they hold lucrative offices under this State. This court has not had occasion to consider the question presented.

The doctrine of *ejusdem generis* is that where a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that the persons or things therein comprised may be read as *ejusdem generis* "with," and not of a quality

superior to or different from, those specifically enumerated. (*Sandiman* v. *Breach,* 7 Barn. & Cr. 96; *Rhone* v. *Loomis,* 74 Minn. 200, 77 N.W. 31.) The reason for the rule is that if the legislature had intended that the general words apply without restriction, it would have used only one compendious word. *Rex* v. *Wallis,* 5 Term R. 375, 5 Durnford & East 196.

The drafters of the constitution of 1870 plainly indicated how the word "office" could be broadly defined when in section 24 of article V they wrote that "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." When the same drafters, in section 3 of article IV prefaced the words "any lucrative office," with the specific offices of "judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress," they must have intended that the words "any lucrative office" be modified by the specific kinds of offices enumerated prior thereto.

The specific offices enumerated are not the only offices the holding of which bar the incumbents from eligibility to serve in the General Assembly, but the enumerated offices stand as the guide or standard for determining the kind of office intended to be included within the meaning of section 3 of article IV of the constitution.

The officers specifically enumerated in section 3 of article IV were important elective offices in 1870 when the constitution was adopted, as they are today. Considering that in 1870 members of the General Assembly received a *per diem* of $5 per day, it would appear that had the framers of the constitution desired to forbid the legislators from any and all other public employment, they would have been explicit in expressing such an intention. In the case of *In re Becker,* 16 Ill.2d 488, we held there was no Illinois precedent prohibiting a lawyer-member of a legislative body

appearing in litigation wherein his government unit is a party, even in cases where acts of that body are sought to be held unconstitutional.

Realities, not conjectures, are presented. From the stipulated facts, it is clear that the nine defendants hold relatively minor local ministerial positions. Section 3 of article IV does not specifically mention the president of a village. In reality, defendant Conti holds a position largely honorary in character, with the day-to-day decisions being made by a municipal manager, "who shall be the administrative head of the municipal government and who shall be responsible for the efficient administration of all departments. * * * The manager shall be appointed for an indefinite term." (Ill. Rev. Stat. 1959, chap. 24, par. 20—7.) Even though the defendant president of the village of Elmwood Park is receiving dual retirement benefits while serving in the General Assembly, his duties in his local position are not to be considered as an office, within the contemplation of section 3 of article IV.

All of the officers specifically named in the constitutional provision occupy their offices for fixed times. Eight defendants, all of whom are deputies, are not elected but appointed to their positions by various appointing authorities. Subject to certain limited protections, the deputies hold their positions at the will and pleasure of the appointing authority. (Ill. Rev. State. 1959, chap. 37, pars. 370, 372.) The constitutional prohibition does not purport to extend to deputies of the officers named. In no real sense are the defendants who are deputy coroner, deputy bailiffs and deputy clerks occupying the same positions as their principals. A chief deputy may be one of many with little, if any, power; he may be merely a process server; he may make out warrants, sort files, keep records of certain files, trace misplaced files and obtain data for answering communications. The duties of such employees are largely ministerial in nature. Each of the eight deputies can be discharged at the caprice

of the coroner, bailiff or clerk. *Saxby* v. *Sonnemann,* clearly recognizes that an individual performing purely ministerial acts does not hold a lucrative office under the State. One defendant enjoys civil service status. But all civil service employees are not officers. In *Kelly* v. *Chicago Park District,* 409 Ill. 91, we observed that a "head attendant" and an "attendant" in a park are not officers in the generally accepted legal definition of the terms.

We hold that the defendants do not occupy offices within the meaning of section 3 of article IV. In view of this holding, it is not necessary for us to construe the word "lucrative," but we note that none of the defendants draws a local salary while serving in the General Assembly, and none of them, with the exception of the village president, receives dual retirement benefits while serving in the General Assembly.

The judgment of the superior court of Cook County is affirmed.

*Judgment affirmed.*