Pattilou DAWKINS, Relator,

v.

Fred MEYER, as State Chairman of the Republican Party of Texas, et al., Respondents.

No. D–2032.

Supreme Court of Texas.

Feb. 25, 1992.

Rehearing Overruled April 1, 1992.

John Mozolo, Wolf Puckett, Harlow Sprouse, Amarillo, for relator.

David Crawford, Amarillo, Fred Meyer, John W. Tunnell, John Hannah, Jr., Austin, Tex Lezar, Houston, Ken Anderson, Dallas, Robert D. Daniel, Houston, Bonnie Schomp, Amarillo, Toni Hunter, Gary Bledsoe, Austin, David Swinford, Dumas, Dan Morales, Austin, for respondents.

## OPINION

CORNYN, Justice.

In this original proceeding we decide whether Pattilou Dawkins, a member of the Board of the Texas Department of Mental Health and Mental Retardation (hereinafter, MHMR) whose term of office will end after the next regular session of the legislature begins, is eligible to be a candidate for the state House of Representatives. Dawkins has been declared ineligible by Fred Meyer, Chairman of the Republican Party of Texas, under his interpretation of the limitation on eligibility contained in article III, section 19 of the Texas Constitution. Because we agree that Dawkins is currently ineligible to be a candidate for the House of Representatives under the provisions of article III, section 19 of the Texas Constitution, we deny Dawkins' petition for writ of mandamus.

### I.

The facts are undisputed. Pattilou Dawkins was appointed to a term on the board of MHMR which ends on January 31, 1993, shortly after the next general session of the legislature is to begin. Board members, under a series of appropriation acts, have been entitled to receive reimbursement for expenses for transportation, for meals and lodging up to $75 per day, as well as compensation of $30 per day for each day of service.[1] On January 3, 1992,

---

1. *See, e.g.*, Act of August 30, 1991, 72d Leg., C.S., ch. 19, art. V, § 4, 1991 Tex.Gen.Laws 365, 1004

**446**

Dawkins applied to be a candidate in the Republican primary for State Representative, District 87. Fred Meyer, Chairman of the Republican Party of Texas, initially accepted her application and certified her as a candidate.

In a letter dated January 27, however, Meyer declared Dawkins ineligible for the legislative term she sought under the provisions of article III, section 19 of the Texas Constitution [2] on the grounds that she held, for an overlapping term, a "lucrative office" of the state. Meyer explained that the public record established that Dawkins was appointed to a term on the MHMR board which was to end on January 31, 1993, after the legislative term was to begin. He further explained that, as a member of the MHMR board, Dawkins was entitled to receive per diem compensation above and beyond reimbursement for actual and necessary expenses.

Dawkins filed this original proceeding, countering that her office cannot be considered lucrative because her expenses incurred in performing her duties on the MHMR board exceed the total of funds she is paid. Thus, she contends, her MHMR board membership cannot be a lucrative office within the meaning of article III, section 19 because she has suffered a net pecuniary loss from her public service on the MHMR board. She further contends that Meyer is relying on a superseded code provision and that, consequently, he wrongly assumed that she received compensation for each day of service *in addition* to full reimbursement for actual expenses. In her uncontroverted affidavit Dawkins avers that in her four and half years on the board

(1991–1993 appropriations act).

2. Article III, section 19 provides:
   No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term to which he is elected or appointed, be eligible to the Legislature.
   This provision has been characterized by the United States Supreme Court as imposing a "waiting period" for state officials before they become eligible for the legislature. *Clements v. Fashing,* 457 U.S. 957, 967, 102 S.Ct. 2836, 2846,

she has incurred unreimbursed expenses of at least $2,000. *See Whitehead v. Julian,* 476 S.W.2d 844, 845 (Tex.1972) (uncontroverted affidavit must be accepted as true). Second, Dawkins contends that this court should apply a canon of constitutional construction, *ejusdem generis,* in construing article III, section 19, and should thus conclude that her board membership is not the type of office which makes her ineligible to run for the legislature. We cannot agree with either of Dawkins' assertions.[3]

## II.

■ Dawkins' first argument directly challenges this court's holding in *Willis v. Potts* that *any* compensation, no matter how meager, renders an office "lucrative." *See* 377 S.W.2d 622, 623 (Tex.1964). Doyle Willis was a Fort Worth city councilman who was entitled to receive $10 per diem for attending meetings, up to $520 per year, in addition to all necessary expenses. The Court rejected Willis's argument that $10 per day was not "adequate" compensation and that, therefore, his office was not "lucrative" within the meaning of the constitution. This court held, relying on a case decided by the Wyoming Supreme Court, that the amount of the salary or compensation attached to an office is not material. *Id.* (citing *Baker v. Board of Comm'rs,* 9 Wyo. 51, 59 P. 797 (1900), quoting MECHEM, PUBLIC OFFICE § 13). Dawkins offers no compelling reason for overruling *Willis.*

■ Had Dawkins received only reimbursement for her expenses and no compensation for her activities with the MHMR, her position would not be con-

73 L.Ed.2d 508 (1982). That is, they must wait until their term of office expires before they are eligible for service in the legislature.

3. Justice GONZALEZ's dissent speculates how we might have answered contentions that Dawkins has not made arising under the United States Constitution; but these are only strawmen which *he* raises and then proceeds to knock down. Similarly, Justice GONZALEZ'S arguments as to how we would have decided this case had Dawkins resigned her position on the MHMR board are only conjecture because that question is not before us.

sidered lucrative. Reimbursement for expenses alone does not render an office "lucrative". *Whitehead v. Julian,* 476 S.W.2d 844, 845 (Tex.1972). In *Whitehead,* the Court held that a mayor who received a $50 per month expense allowance, and whose expenses were greater than or equal to the expense allowance did not hold a "lucrative office." The court continued to define a lucrative office as one in which the holder received a salary, fees, or "other compensation." In this case, Dawkins receives more than reimbursement for expenses—she is compensated $30 per day independent of any expenses she incurred. Consequently, we defer to our own precedent and hold that her position on the board of the MHMR is lucrative.

Dawkins' argument that her position cannot be considered lucrative because her expenses exceed her compensation is superficially attractive but, on closer scrutiny, is fraught with insurmountable problems. First, were we to adopt such a test, MHMR board members who do not incur additional expenses for meals or lodging because they live in or near Austin, or because they stay with relatives, would not be eligible to run for the legislature; and those, like Dawkins, who spend in excess of their allotment for expenses and per diem would be eligible. Such disparate treatment of eligibility based on geography and differences in individual spending habits is insupportable.

Second, such a test could render article III, section 19 an irrational standard against which to judge eligibility for legislative office. If the test for whether an office is "lucrative" is that an office holder's compensation exceeds his or her expenses, an office holder's eligibility would be determined based purely on the level of his or her expenses. The resulting lack of a certain, meaningful standard is obvious.

These factors militate heavily against adopting a test for "lucrative" which measures an office holder's compensation against his or her expenses. Instead, we stand by the rule we announced in *Willis v. Potts* that an office is lucrative if the office holder receives any compensation, no matter how small. Consequently, we hold that Dawkins' position with MHMR is a lucrative position within the meaning of article III, section 19 of the Texas Constitution.

### III.

■ Dawkins next argues that a canon of constitutional and statutory construction, the doctrine of *ejusdem generis,* requires us to hold that board membership is not the type of a lucrative office covered by the constitutional prohibition at issue. Under the doctrine of *ejusdem generis,* where specific and particular enumerations of persons or things are followed by general words in a constitutional provision, the general words are not to be construed in their widest meaning or extent, but are treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned. *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 272 (1944); *San Antonio Indep. School Dist. v. Dechman,* 173 S.W. 525, 526 (Tex.Civ.App.—San Antonio 1915, writ ref'd). The purpose of the rule is to prevent general words used loosely with specific terms from including things not intended. *Phillips v. Houston Nat'l Bank,* 108 F.2d 934, 936 (5th Cir. 1940).

Ultimately, the goal of every rule of construction, including the rule of *ejusdem generis,* is to determine the intent of those who wrote the words in question. The rule of *ejusdem generis* can, therefore, only be used as an aid in ascertaining the intended coverage of article III, § 19, not to subvert that intent once ascertained. *See United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). No constitutional provision should be construed in such a way as to defeat its very purpose. *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 154 (1942). Analyzed with these principles in mind, we hold that article III, section 19 renders Dawkins ineligible to run for the legislature.

### A.

■ The standards by which we interpret our constitution are plain. As we have recently stated:

The Texas Constitution derives its force from the people of Texas. This is the fundamental law under which the people of this state have consented to be governed. In construing [its] language ... we consider 'the intent of the people who adopted it.' In determining that intent, 'the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are proper subjects of inquiry.' However, because of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text. We seek its meaning with the understanding that the Constitution was ratified to function as an organic document to govern society and institutions as they evolve through time.

*Edgewood v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989) (citations omitted); *Damon v. Cornett,* 781 S.W.2d 597, 599 (Tex.1989). Judges are not free to question the wisdom of our constitution, but must give full effect to its plain language. *Cramer v. Sheppard,* 167 S.W.2d at 154. On the other hand, we must also be mindful that any constitutional or statutory provision which restricts the right to hold public office should be strictly construed against ineligibility. *Willis,* 377 S.W.2d at 623; *see also Sears v. Bayoud,* 786 S.W.2d 248, 251 (Tex. 1990); *Brown v. Meyer,* 787 S.W.2d 42, 45 (Tex.1990).

### B.

■ Dawkins contends that the framer's intent in adopting article III, section 19 will not be defeated by allowing a person holding a part-time, unprofitable position on an appointed board to run for the legislature.

Article III, section 19's historical antecedents date to a 1701 act of Parliament which rendered a "Person who [had] an Office or Place of Profit under the King or receive[d] a Pention from the Crown" ineligible to serve in the House of Commons. 12 & 13 Gul., ch. II, § 3. A 1707 statute stated that if a member of the House of Commons accepted an "Office of Profit" from the Crown, that member's election to the House would be void "as if such Person so accepting was naturally dead." 6 Anne, ch. 41, § 25. The policy underlying such prohibitions, including article III, section 19, is the doctrine of separation of powers which was considered a means of mitigating undue influence by the executive upon the legislative branch. 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 134 (1977).

The framers' intent behind article III, section 19,—to bolster the separation of powers doctrine—as well as this court's decisions interpreting that section, control our decision in this case. Whether we agree or disagree with the wisdom of the constitutional method chosen to accomplish the framers' intent is beside the point. We are not free, by implementing a rule of construction, to "stretch" the meaning of unambiguous words to achieve a result we might consider to be more desirable, or even better public policy. *See Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249, 253 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). This is precisely what acceptance of Dawkins' arguments would require us to do. Because Dawkins' proffered construction of article III, section 19 would violate the intent of the framers of our constitution, we decline to adopt it.

### C.

Dawkins' reliance on the doctrine of *ejusdem generis* is similarly misplaced. First, Dawkins' argument ignores the fact that we have held other offices, dissimilar to those specifically mentioned in article III, section 19, to be covered by the terms of the provision. *See, e.g., Willis v. Potts,* 377 S.W.2d 622, 623 (Tex.1964) (city councilman); *Lee v. Daniels,* 377 S.W.2d 618 (Tex. 1964) (county commissioner); *Kirk v. Gordon,* 376 S.W.2d 560 (Tex.1964) (district attorney); *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570 (1944) (county superintendent of schools); *see also Smith v. Dean,* 554 F.Supp. 29 (N.D.Tex.1982) (mayor of Mesquite disqualified under this article). Thus, having held that article III,

section 19 applies to a city councilman, a county commissioner, a district attorney, a county superintendent of schools, and a mayor, application of the rule of *ejusdem generis* cannot compel a different result for an MHMR board member.

## D.

Second, Dawkins herself concedes that the purpose of section 19 is to mitigate the executive's influence on the legislature. The doctrine would therefore require disqualification of all officeholders who were members of the executive branch in a way akin to the offices enumerated in section 19, for example, a "clerk of any court of record." It logically follows, then, that a member of the MHMR board, which is an agency within the executive department holding significant policy-making powers[4], is even closer to the intended purpose of the prohibition than a clerk of court would be. The purposes of separation of powers are better served by preventing a policy-making member of the executive department from running for the legislature than a clerk of the court. Under this logic, *ejusdem generis* actually argues against Dawkins' position.

## E.

Although Dawkins correctly contends that none of our decisions have interpreted

the phrase "lucrative office" in light of the *ejusdem generis* doctrine, Illinois Supreme Court has done so. *People v. Capuzi*, 20 Ill.2d 486, 170 N.E.2d 625 (1960). The *Capuzi* court interpreted article IV, section 3[5] of the Illinois constitution which at that time provided in part:

No judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state, or any foreign government, shall have a seat in the general assembly: provided, that appointments in the militia and the offices of notary public and justice of the peace, shall not be considered lucrative.

The Illinois court concluded in *Capuzi* that the offices of deputy coroner and deputy clerk, whose duties were largely ministerial and could be discharged at the caprice of their superiors, were not lucrative offices within the meaning of the Illinois constitution. The court reasoned that the preface of specific offices must have been intended to modify the phrase "any lucrative office." The "enumerated offices stand as the guide or standard for determining the kind of office intended to be included within the means [meaning] of section 3 of article IV of the constitution." 170 N.E.2d at 629–30.[6] The court reasoned that deputy coro-

---

4. *See* TEXAS HEALTH & SAFETY CODE § 532.015. The MHMR board is responsible for, among other things, developing rules and general policies to guide MHMR. *Id.* MHMR is a immense state agency with an annual budget of more than one billion dollars. Act of August 30, 1991, 72d Leg., C.S., ch. 19, art. II, § 1, 1991 Tex.Gen.Laws 365, 742 (1991–1993 appropriations act).

5. The provision of the Illinois constitution interpreted by the *Capuzi* court has been amended and now reads, in pertinent part:

No member of the General Assembly shall receive compensation as a public officer or employee from any other governmental entity for time during which he is in attendance as a member of the General Assembly.

No member of the General Assembly during the term for which he was elected or appointed shall be appointed to a public office which shall have been created or the compensation for which shall have been increased by the General Assembly during that term.

ILL. CONST. art. IV, § 2. While the "lucrative office" language has been deleted in the amended version of the provision, the analysis performed by the *Capuzi* court demonstrates the weakness of Dawkins' argument based on the rule of *ejusdem generis*.

6. The *Capuzi* court also rebuffed a separate argument under its general separation of powers provision, art. II, since the defendants were not exercising governmental sovereignty in the performance of their duties under their local positions, and since article IV, § 3 specifically dealt with the qualifications of members of the General Assembly. The suit started out as a declaratory judgment action filed concerning various members of the Assembly, and was converted to a quo warranto action. The court also emphasized that the Constitution obviously contemplated outside employment, since Assembly members received at that time only $5 per day, and that these positions were only minor ministerial appointments, held at the will and pleas-

**450**

ners and deputy clerks were not part of the same class as the enumerated officeholders because the deputies did not exercise governmental sovereignty in the performance of their duties and could be dismissed at the will of the office holders—the clerk and coroner.

Dawkins argues that the office of deputy clerk and deputy coroner are far more similar to the enumerated offices in the Illinois's constitution than is the office of MHMR board member to the enumerated offices in the Texas Constitution. Dawkins contends that the general words "any person holding a lucrative office under the United States, or this State ..." is restricted by the designation of particular offices, i.e., Judges, the Secretary of State, the Attorney General, Clerks of any court of record. She argues that the listed positions are strikingly different from the position of a member of the MHMR board because they are full time jobs paying substantial salaries. They are not, she argues, of the same class as the $30 per diem compensation paid to part-time board members. In essence, Dawkins would have us distinguish our prior interpretations of the scope of article III, section 19 by effectively interlineating a "full-time" employment distinction within the section's prohibition.

However, we had this opportunity in *Willis* and rejected it, holding that section 19's prohibition applies to a part-time councilman.[7] Dawkins fails to inform us of any authority which would permit us to reverse field on the distinction Dawkins urges.

IV.

The language of the constitution and our previous interpretations of article III, section 19 constrain us to hold that Dawkins is not currently eligible to be a candidate for the House of Representatives. Were we to decide otherwise under the banner of *ejusdem generis* and through overly technical and strained distinctions with our prior holdings, the application of article III, section 19 would be rendered uncertain and unpredictable. We will not countenance a construction of our constitution that would so plainly generate uncertainty concerning the eligibility of legislative candidates. To hold otherwise would unnecessarily complicate the already difficult duties performed by election officials and unwittingly encourage additional litigation on this issue. We acknowledge the harshness of the result of the decision we make today. However, the power to change such a result by amending our constitution lies not in our hands, but in the hands of the sovereign people of the State of Texas.[8]

\* \* \* \* \* \*

ure of the appointing authorities. And while one was civil service, all such employees were not officers.

7. Justice GONZALEZ's dissent advances a different standard—one that depends on whether the office holder's position is "the holder's principal, if not exclusive occupation." At 452 (Gonzalez, J., dissenting). However, this standard is troublesome because it would require the collection of evidence and perhaps the kind of fact finding that courts normally perform.

However, it is not the courts—at least in the first instance—who would be drawing the fine distinctions Justice GONZALEZ would have them draw. Instead, election officials, who are restricted to considering factors that appear as a matter of public record, *Garcia v. Carpenter*, 525 S.W.2d 160, 161 (Tex.1975); *Weatherly v. Fulgham*, 153 Tex. 481, 271 S.W.2d 938, 941 (1954), would be forced to make such decisions. And, if a dispute about the facts arose, election officials would be unable to determine a candidate's eligibility because they have no power or authority to determine disputed questions of

fact relating to a candidate's eligibility for office. *Canady v. Democratic Executive Comm.*, 381 S.W.2d 321, 323 (Tex.1964); *Baker v. Porter*, 160 Tex. 488, 333 S.W.2d 594, 595 (1960).

8. Contrary to Justice GONZALEZ's argument, a constitutional amendment, initiated by the legislature, is not the sole means of restoring the eligibility of Dawkins and other similarly-situated appointees to state boards and commissions. If the next appropriation act passed by the legislature provides that the monies paid such persons will consist of only legitimate expense reimbursements, no bar to legislative candidacy will exist. Here, Dawkins receives both such an expense reimbursement and an additional per diem compensation fixed by statute.

Furthermore, we cannot agree with the cynical argument that the legislature, as the elected representatives of the people, will steadfastly resist the entreaties of the electorate should Texans deem a constitutional amendment desirable. We point out the obvious: each legislator's continuation in office depends on his or her responsiveness to the collective will of his or her constituents.

For the foregoing reasons, Dawkins' petition for writ of mandamus is denied.

Dissenting opinion by GONZALEZ, J., joined by HIGHTOWER, J.

Dissenting opinion by GAMMAGE, J., joined by MAUZY, J.

GONZALEZ, Justice, dissenting.

Pattilou Dawkins, a member of the MHMR board, is free to be a candidate for President of the United States, United States Senator, member of Congress, Governor, Lieutenant Governor, Railroad Commissioner, county judge, county commissioner, mayor, and numerous other offices. Today, however, the Court declares that Ms. Dawkins *is not free* to run for the *Texas Legislature.*

The Court states that it is compelled and duty bound to follow what seems to me to be a ridiculous judicial gloss contained in this court's past interpretations of an ambiguous provision of the Texas Constitution. I would overrule or modify the decisions relied on by the Court and hold that an MHMR board member does not hold a "lucrative office" as defined by article III, section 19 of the Texas Constitution.[1] Furthermore, the fact that section 19's prohibition affects certain offices and not others raises some serious equal protection and First Amendment questions regarding its constitutionality. The Court did not address these constitutional questions, because Ms. Dawkins did not raise them. However, in an appropriate case, we will have to address them.

I believe that the Court has erred by relying on improvident precedent to give article III, section 19 an overbroad interpretation fraught with constitutional problems.

Article III, section 19 provides that:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, **or any person holding a lucrative office** under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the **Legislature.**

(emphasis added).

In the over 100 years that this provision has been in existence, the Texas Legislature has not adopted a comparable provision to bar candidacy for any other office.

The fundamental issues in this case depend on how we interpret the scope of the prohibition under article III, section 19. The broadest interpretation of this provision would disqualify someone from running for the legislature if he or she holds a "lucrative" office which, according to the Court, is one for which the legislature denominates payment as "compensation" rather than "reimbursement." This simplistic analysis of the constitutional provision is the basis for today's inequitable holding. Thus, the legislature's choice of words, not the amount of money involved, determines whether a job is "lucrative." If the legislature designated $30,000 remuneration for an office as *reimbursement*, then that job would not be "lucrative," and the officeholder could run for the legislature. But if the legislature designated $1 as payment for a particular position, and called it *compensation*, then that office is "lucrative" and prohibits candidacy. I object to hinging the right of public spirited officeholders like Ms. Dawkins to run for the legislature on the legislatively-selected label placed on an office's remuneration.[2]

1. The Court laments the harshness of its holding by stating that "the power to change such a result by amending our constitution lies not in our hands, but in the hands of the sovereign people of the State of Texas." Majority opinion at 450. However, in all likelihood, the sovereign people of the State of Texas will never have the opportunity to repeal this provision. It takes the affirmative vote of two-thirds of both houses for a proposed amendment to be submitted to the people for a vote; and since there is no incentive for incumbents to increase the pool of their possible competition, the reality is that such a bill would die in committee. *See* TEX. CONST. art. XVII, § 1.

2. Under today's holding, if Ms. Dawkins, rather than being on the board of MHMR, was Assistant Chief of Protocol for the government of Kuwait for $1.00 per year or the Vice–Consul of Liechtenstein for the same remuneration, she would be ineligible to run for the legislature.

If possible, we should adopt an interpretation of section 19 that preserves the principle, recently reiterated by this court, "that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility." *Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex. 1990); *see also Sears v. Bayoud*, 786 S.W.2d 248, 251 (Tex.1990). We can construe section 19 to preserve *Brown v. Meyer*'s directive by applying section 19 only to those offices which are the holder's principal, if not exclusive, occupation. Compensation is relevant in that these offices provide a livelihood so that the officeholder can dedicate his or her efforts exclusively to the work required. The MHMR board of which Ms. Dawkins is a member meets about four times a year, and the $30 per diem she receives does little to change the essentially charitable nature of her service. Under this preferable interpretation of section 19, Ms. Dawkins would not be prohibited from running. We should permit neither sketchy history nor poor precedent to steamroll Ms. Dawkins' rights; but the Court does just that.

The Court states that the amendment's history supports the Court's result, asserting that section 19 is descended from a 1707 English statute that prohibited employees of the Crown from serving in the House of Commons. Majority opinion at 448. That statute, however, essentially proscribed dual officeholding; it said nothing of the rights of a Crown employee to run for the House of Commons. The policy advanced by this historical reference seeks, as the Court notes, to preserve the separation of powers by preventing dual officeholding. This policy argument neither fits this case nor supports the Court's decision to deny Ms. Dawkins' candidacy. For *Ms. Dawkins is not seeking to hold two offices at the same time*. Reading the Texas Constitution as a whole, which we must do, reveals that article III, section 19 is not principally a prohibition against dual officeholding, because that problem is addressed by other articles of our constitution. TEX. CONST. art. XVI, §§ 12, 33, 40. These other constitutional provisions would compel Ms. Dawkins, upon election to the legislature, to resign her position with MHMR. These provisions also indicate that section 19 must stand for something other than separation of powers.

The United States Supreme Court analyzed article III, section 19 in *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). *Clements* involved several justices of the peace running for the legislature. They challenged section 19 on First Amendment and equal protection grounds, and a plurality of the court held that section 19 did not violate the United States Constitution. 457 U.S. at 971, 102 S.Ct. at 2848. The court concluded that a rational predicate for the "temporary" denial of candidacy existed due to: 1) Texas' interest in maintaining the integrity of the judiciary; 2) the likelihood that the demands of a political campaign would tempt a judge to devote less than was required by his or her current office; and 3) the need to discourage a judge from leaving office before the end of the term. 457 U.S. at 968, 102 S.Ct. at 2846. These three purposes are ill-served (or irrationally served) by the group of officeholders covered by section 19. Only those officeholders whose terms happen to overlap with the legislative term are prohibited from running for the legislature. Those whose terms do not overlap with that of the legislature are left free to campaign for the legislature while remaining in office. See *Chapa v. Whittle*, 536 S.W.2d 681 (Tex.Civ.App.—Corpus Christi 1976, no writ).

Additionally, if these are legitimate state interests, then why do they only apply to officeholders who run for the legislature and not to those running for other offices? And why do these interests only limit the rights of an officeholder whose term overlaps the legislative term? And what of a federal judge who is appointed to a lifetime position; is he or she forever precluded from running for the state legislature, despite resignation from the judicial post. What if an officeholder like Ms. Dawkins waives compensation? In my opinion, it is very questionable whether the classifications embodied in section 19 have any

meaningful relationship to the state interests expressed in *Clements*.

The plurality in *Clements* carefully limited its holding to the case before it. In short, it found a sufficient state interest in maintaining the integrity of the judiciary to satisfy an equal protection analysis; but the plurality pointedly observed that such an interest would not necessarily be as compelling when applied to other state officeholders. *Clements*, 457 U.S. at 966 n. 3, 968 n. 5, 102 S.Ct. at 2845 n. 3, 2846 n. 5.

The dissent in *Clements* was not as charitable. In particular, it questioned whether our court's decision in *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), created equal protection and First Amendment problems and whether the state interests advanced by the amendment as interpreted would pass even minimal scrutiny. 457 U.S. at 980 n. 4, 102 S.Ct. at 2852 n. 4 (Brennan, J., dissenting). Justice Brennan commented that section 19, as interpreted in our prior opinions, served no purpose but to function as a legislative incumbent's protection "act." *Clements*, 457 U.S. at 979, 102 S.Ct. at 2852. He concluded that "[t]he only conceivable state interest in barring these candidacies would be the impermissible one of protecting Texas legislative seats against outside competition." *Id.* I agree; and because such a policy cannot have been the intent of the framers and ratifiers of our constitution, we must reexamine whether this provision as interpreted by existing precedent frustrates rather than effectuates the framers' conceivable intent.[3]

In 1964, this court rendered two decisions within a week of one another whose misguided interpretations of section 19 unfortunately shape today's holding. *See Willis v. Potts*, 377 S.W.2d 622 (Tex 1964); *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964). First, the court held in *Lee* that even after

an officeholder resigns from office, the candidate is not eligible to run for the legislature if the term of the original office overlaps with the legislative term. 377 S.W.2d at 619–20. This ludicrous decision had an unfortunate impact on this case. Ms. Dawkins stated at oral argument that, but for our holding in *Lee*, she would have resigned from the MHMR board before announcing her candidacy for the legislature. Thus, I would remove this unwise impediment to elective office and overrule *Lee* and its progeny.

Second, this court held in *Willis v. Potts* that a "lucrative" office is one in which an officeholder receives any "compensation," no matter how insignificant. 377 S.W.2d at 627. In *Willis*, a city councilman who received ten dollars per day compensation, not to exceed $520 in total, was determined to be ineligible to run for the Texas Senate. 377 S.W.2d at 627. The councilman argued that the per diem was not adequate to compensate him for the time he spent discharging his duties, and therefore he did not hold a "lucrative office" within the meaning of the constitution. *Willis*, 377 S.W.2d at 623. The court disagreed and determined that he was ineligible under the amendment without considering the underlying purpose of the amendment and the nature of the office involved. The court cited with approval *Baker v. Board of Comm'rs*, a 1900 Wyoming Supreme Court case. 9 Wyo. 51, 59 P. 797 (1900). Perhaps ten dollars a day in 1900 was "lucrative," but it is ridiculous to assert such by today's standards. In my opinion, *Willis* and its predecessors and progeny should be overruled. *See, e.g., Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964); *Burroughs v. Lyles*, 142 Tex. 704, 181 S.W.2d 570 (1944).

The Court has concluded that precedent compels today's decision. While the doc-

---

3.  If incumbent protection was the intent of this provision, it is illegitimate and cannot withstand constitutional scrutiny. The Court states that "[t]he intent behind article III, section 19 [is] to bolster the separation of powers...." Majority opinion at 448. The Court cites no primary authority for this statement. In reality, the true purpose of article III, section 19 is unclear, and the Court is forced to admit as much upon

concluding that "Ms. Dawkins' interpretation of article III, section 19 runs counter to what we perceive to be the intent of the framers...." Majority opinion at 449. Because the Court cannot cite any historical analysis of the debates or other evidence of the framers' intent, the Court is forced to guess what that intent might have been.

trine of *stare decisis* shapes this court's decision-making, it does not render our rules immutable.[4] To the contrary, there are rare occasions when "[t]here are justifiable escapes and liberations from the rigidities and inflexibilities of *stare decisis.*" *United States v. Cocke,* 399 F.2d 433, 448 (5th Cir.1968). In the words of Justice Cardozo:

> Through one agency or another, either by statute or by decision, rules, however well established, must be revised when they are found after fair trial to be inconsistent in their workings with an attainment of the ends which [the] law is meant to serve. The revision is a delicate task, not to be undertaken by gross or adventurous hands, lest certainty and order be unduly sacrificed, yet a task also not to be shirked through timidity or sloth.

*Cocke,* 399 F.2d at 448 (*quoting* Cardozo, THE GROWTH OF THE LAW 120 (1924)).

In my opinion, this case favors a rare departure from the doctrine of *stare decisis.* Reflexive reliance upon the doctrine forces the Court to reach an unjust and irrational result, and to grant a judgment which it is loath to render. If the Court is not willing to reconsider whether we wrongly decided our earlier decisions on this question, we will forever be burdened with these misguided holdings. In most situations, if the legislature disagrees with the law we announce, it may simply pass a new statute. If necessary, the legislature can submit a proposal for a constitutional amendment to the people. As previously noted, there is in this case, understandably no motivation for incumbents in the legislature to muster the necessary two-thirds vote to allow the people of Texas to vote on whether to annul section 19. If *stare decisis* is viewed as precluding further review, unless the United States Supreme Court decides that the provision as applied violates the United States Constitution, we are forever condemned to repeat our original mistake.[5]

Though I think the Court has reached the wrong result, I concur with one point in its opinion. Ms. Dawkins asserts that her expenses exceeded any remuneration and therefore the position is not "lucrative." I agree that this "net profit" test would prove to be an unworkable standard. The amount of "net profit," or even the total amount of compensation, cannot be a litmus test to determine whether a particular position is a lucrative office; but it may be indicative of whether the office is one intended to be within the prohibition of article III, section 19. For example, a Railroad Commissioner with an appropriated salary of over $74,000, and whose duties contemplate sustained day-to-day effort, clearly is precluded from running for the legislature while still in office. At the other extreme, Ms. Dawkins, who receives $30 per day for a few days' service per year, would not come within the prohibition.

Finally, our goal is to give effect to the original intent of article III, section 19, if it can be discerned. We must perhaps rhetorically ask whether the people of Texas truly intended to delay the entry into the legislature of public spirited persons who serve on State boards for only token compensation. Permitting Ms. Dawkins to remain on the ballot would not produce any injurious or unjust consequences. Since we can give constitutional effect to section 19 without violating our stated presumption against finding a potential candidate ineligible to run, we should allow Ms. Dawkins' candidacy and liberate our elective process from the unwise precedents this court has previously and imprudently imposed.

---

**4.** As the court noted in *Gutierrez v. Collins,* 583 S.W.2d 312, 317 (Tex.1979):

> [T]he doctrine of *stare decisis* does not stand as an insurmountable bar to overruling precedent. *Stare decisis* prevents change for the sake of change; it does not prevent any change at all. It creates a strong presumption in favor of the established law; it does not render that law immutable. Indeed, the genius of the common law rests in its ability to change, to recognize when a timeworn rule no longer serves the needs of society, and to modify the rule accordingly.

**5.** When the trail down the mountain comes to a cliff, it is time to search for a new trail, and we ought to do this ourselves without having it done for us by the United States Supreme Court.

I am convinced that today's decision sadly will deprive us of the service of persons who have a demonstrable public spirit without appreciably advancing any significant state interest. Although I am aware that we should not abandon precedent lightly, I am also convinced that we need not endure bad law in order to pristinely preserve the doctrine of *stare decisis*. Since, we can more precisely tailor our interpretation of article III, section 19 to advance legitimate state concerns, thereby giving greater effect to the constitutional rights of candidates and voters, we should do so.

For the foregoing reasons, I would grant Ms. Dawkins' petition for writ of mandamus.

HIGHTOWER, J., joins this opinion.

GAMMAGE, Justice, dissenting.

I dissent.

Restrictions on the right to hold public office should be *"strictly* construed *against* ineligibility." *Brown v. Meyer,* 787 S.W.2d 42, 45 (Tex.1990) (emphasis added) (citations omitted). Today, the majority pays lip service to this principle by reciting it and then promptly abandoning it to zealously pursue a contrary course.

The majority, likewise, articulates the principle of *ejusdem generis* (when specific and particular enumerations of persons or things in a statutory or constitutional provision are followed by general words, the general words are to have limited application extending *only* to persons or things of the same kind or class as those particularly described, *Stanford v. Butler,* 142 Tex. 692, 698, 181 S.W.2d 269, 272 (1944)), then just as promptly abandons this doctrine.

In a cloud of obfuscation which ignores the more rational and recent precedent of *Whitehead v. Julian,* 476 S.W.2d 844 (Tex. 1972), the majority goes beyond mere slavish obedience to bad precedents in which *ejusdem generis* was neither raised nor considered, and, in an act of exaggerated credulity, reinforces the historical absurdity of this court's earlier mistakes in *Willis v. Potts,* 377 S.W.2d 622, 623 (Tex.1964); *Lee v. Daniels,* 377 S.W.2d 618 (Tex.1964); *Kirk v. Gordon,* 376 S.W.2d 560 (Tex.1964); and *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570 (1944). As wrongly decided as these cases are, they are distinguishable from the case before us because none of them involved citizen-volunteers such as Pattilou Dawkins; all involved officeholders exercising daily executive or administrative authority in full-time positions.

The majority continues its contortion of legal principles by misconstruing and misapplying caselaw from a sister state interpreting similar constitutional language.[1] In *People v. Capuzi,* 20 Ill.2d 486, 170 N.E.2d 625 (1960), the Illinois Supreme Court applied *ejusdem generis* to its then-existing constitutional provision and reasoned that, among others, village president Elmer U. Conti (whose "lucrative" office provided for both compensation and retirement benefits) was *not* included within the constitutional prohibition because his office did not involve actual day-to-day control, which was vested in the hands of a municipal manager. *Id.* 170 N.E.2d at 630.

Pattilou Dawkins performs citizen service on the board of the Texas Department of Mental Health and Mental Retardation (MHMR). The board is required to meet

---

1. Article IV, section 3 of the Illinois Constitution of 1870 provided in relevant part:

   No judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state ... shall have a seat in the general assembly....

   ILL. CONST. art. IV, § 3 (1870). After its state constitution was declared unconstitutional under the one-man, one-vote principles of the United States Constitution, Illinois through constitutional convention in 1970 eliminated this provision from its constitution entirely. The limitations substituted in the successor provision have nothing to do with this case, and would not disqualify Ms. Dawkins. *See* Majority Opinion, at 449 n. 5. *Cf.* TEX. CONST. art. III, § 19:

   No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature.

   TEX. CONST. art. III, § 19.

four times a year and she receives a nominal per diem and partial reimbursement for the expense of performing this service. As in *Capuzi,* her office does not involve actual day-to-day management and control. Such authority is vested in a full-time commissioner.[2] Her office is neither "lucrative" under any contemporary definition, nor is it of the kind or class (judges, the Secretary of State, the Attorney General, and court clerks) particularly described in art. III, § 19. *See Stanford,* 142 Tex. at 698, 181 S.W.2d at 272.

In its decision today, the majority ignores the very standards of review and principles of construction it cites, and instead strives mightily and achieves a ludicrous consistency with an absurd past.[3] If this court's precedents in *Willis, Lee, Kirk,* and *Burroughs* cannot be distinguished from this case, they should be overruled to the extent they conflict.

Pattilou Dawkins is not ineligible to hold legislative office [4] and her certification as a candidate in the Republican primary election should be restored.

MAUZY, J., joins this dissent.

---

2. *See* TEX.HEALTH & SAFETY CODE ANN. § 532.011 (Vernon 1992) (providing for commissioner). Ironically, the commissioner, as an at-will state employee, is eligible to run for the legislature under art. III, § 19, even though his or her office is executive/administrative, full-time, and lucrative.

3. "A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." Ralph Waldo Emerson, ESSAYS: FIRST SERIES (1841).

4. Upon taking office as a legislator, Dawkins' MHMR board membership would be automatically vacated under TEX. CONST. art. XVI, § 40. *See Pruitt v. Glen Rose Indep. Sch. Dist. No. 1,* 126 Tex. 45, 49, 84 S.W.2d 1004, 1006 (1935).